15860

STATE v. SCOTT

(38 S. E. (2d), 902)

*Messrs. F. R. Hemingway* and *M. A. Shuler,* of Kingstree, for Appellant,

August 2, 1946.

Mr. Associate Justice Fishburne delivered the unanimous opinion of the Court.

The appellant, Lewis Scott, was convicted of the murder of Walter Evans and sentenced to death by electrocution. From this judgment he appeals.

Mr. Evans, a white man, was night policeman of the town of Greeleyville. Shortly after midnight on September 14, 1945 he was found dead on the side of the road near the outskirts of the town, about sixty feet from a street light. He had been shot through the chest with a pistol.

The appellant, a negro farm hand twenty-six years of age, was arrested at his father's home just before daylight on the morning of the homicide by the sheriff of Williamsburg County, after several other suspects had been investigated and interviewed. He was indicted and tried on November 5, 1945. Having no counsel, the court appointed Mr. Shuler and Mr. Hemingway, two members of the Williamsburg Bar, to represent him. The appeal comes here *in forma pauperis.*

The chief question presented by the exceptions is whether the court erred in submitting to the jury evidence as to an alleged confession by the appellant. There were no eyewitnesses, and the state relied almost entirely upon the confession for a conviction. In passing upon this issue, it becomes necessary to give a brief review of the evidence showing the circumstances under which the confession in

question was secured. The defendant contended that it was involuntary and obtained under duress and mistreatment.

Following his arrest on the night of the homicide, the accused was taken to the scene of the killing and from there carried to Kingstree, where he was placed in the county jail. He was stripped by the sheriff, and certain scratches were discovered across his chest, neck and back. He explained these scratches by saying that they had been received in the woods while he was staking an ox. He was then taken by the sheriff to his father's farm near Greeleyville to identify the exact spot where he had received the scratches, and the particular limb which had inflicted them. The defendant was unable to do this. The sheriff testified that he took the appellant back and forth from the jail to Greeleyville two or three times in order to verify various versions given him by the appellant as to his movements prior to the homicide; and that in no instance was a satisfactory explanation offered.

In the county jail, the defendant was under frequent inquisition by the officer. After he had been confined in jail two or three weeks, he stated, according to the sheriff, that it was useless for him to continue denying the commission of the crime. He then confessed to the sheriff in the presence of the deputy sheriff that on the night of September 14, 1945, he had spent several hours in Greeleyville, reaching there about dusk; that he had drunk two bottles of beer and a half pint of liquor. That, wishing to go to a negro dance, he had exchanged clothes with a negro acquaintance, and several hours later was going out of town toward his home in the country when he met Mr. Evans, the policeman. Evans had cautioned him, two or three hours before, that he was drinking too much, and that he had better go home after a while. The defendant stated that when he met the policeman on this second occasion the officer tried to arrest him, and he immediately started resisting and fighting. The officer pulled his pistol and in the ensuing scuffle the defendant got possession of the gun, stepped back two

steps, and shot him in the breast. He threw the pistol away a short distance, across a ditch, and went on home. This was the state's testimony.

When the defendant testified on trial, he affirmed the truth of the matter contained in the sheriff's version of his confession, except that he did not get complete possession of the pistol, and did not step back and shoot the officer; nor did he resist arrest. He said that he had no intention of shooting the policeman; that the pistol went off accidentally while he and the officer fought for its possession; that his sole purpose in struggling for the pistol was in order to obtain it so that the officer could not shoot him and so that he could escape in safety. The medical testimony showed that the bullet pierced the officer's chest near the fourth rib and came out his back two inches higher than the point of entrance.

The appellant testified that the confession was wrung from him by the sheriff by mistreatment and violence. He said that several times he was taken from his cell by the sheriff and the deputy sheriff to a room upstairs in the county jail, where the sheriff beat him. That he finally made the alleged confession because he did not want to be beaten any more. Both the sheriff and the deputy stated that the confession was entirely voluntary. They denied that the accused had been beaten or coerced in any manner; but there was no denial that he was taken from his cell and carried upstairs several times and subjected to questioning.

■ Under the rule which prevails in this state the question of whether or not a confession is voluntary is one which is addressed to the court in the first instance. However, if there be any reasonable doubt in the mind of the trial judge as to the character of the confession, or if the evidence is conflicting, the jury must be the final arbiter of such fact. *State v. Melton,* 186 S. C., 478, 196 S. E., 181; *State v. Peden,* 157 S. C., 459, 154 S. E., 658; *State v. Danelly,*

116 S. C., 113, 107 S. E., 149, 14 A. L. R. 1420; *State v. Rogers,* 99 S. C., 504, 85 S. E., 971.

■ Under the conflicting evidence relating to the character of the alleged confession, the trial judge was evidently of the opinion that more than one reasonable inference could be drawn, and submitted the question to the jury. In doing so, he followed the rule announced in the above cited cases, and the exceptions raising this issue cannot be sustained.

However, in view of the fact that this is a capital case, we have felt it to be our duty *in favorem vitae* to closely scrutinize the entire record for the purpose of determining whether all of the rights of the accused were protected on his trial. The record discloses, in our opinion, a serious inadvertence on the part of the trial judge in charging the law relating to confessions.

After fully and ably instructing the jury on the applicable principles of law relating to murder, self-defense, manslaughter, arrest and resisting arrest, he charged as follows:

"I charge you further that if there be a confession, or testimony in the nature of a confession, in this case, that it is your duty first to inquire as to whether or not that confession, if there be one, was made freely and voluntarily without reward or hope of reward. And until you conclude that it was made freely and voluntarily you should not consider it in this case. If you conclude that the confession was made, if there be one, was made freely and voluntarily and without any hope of reward, then you would be entitled to consider it and give it such weight as you, in your good judgment, conclude that it should be given. But under no circumstances should you consider it as testimony in this case until you have first concluded that it was freely and voluntarily made."

It will be noted that in charging the law as to the confession, the judge told the jury to determine whether it "was made freely and voluntarily, without reward or hope

of reward." And this statement was repeated in a subsequent sentence. The character of the confession,—that is, whether it was freely and voluntarily made, was inseparably linked in the charge with reward or hope of reward. We must assume that the jury accepted the instruction as given in the spoken words without giving any consideration or weight to the evidence as to whether the confession was extorted by fear and physical violence.

■ It is stated in 16 C. J., Sec. 2421, Page 1003, "* * * where the court undertakes to analyze or to define what makes a confession voluntary, both members of the definition should be presented to the jury, namely, the slightest hope of benefit or the remotest fear of injury." And in 23 C. J. S., Sec. 1232, Page 798, "The court should properly instruct as to what constitutes a voluntary confession."

In *State v. Baker*, 58 S. C., 111, 36 S. E., 501, this court approved the following instruction given to the jury as containing the correct principles of law relating to confessions:

" 'Well, the rule is this: Where it is done freely and fairly, without the flattery of hope or the fear of force or violence, it is admitted as evidence, as the truth, if you find it worthy of belief, against the person who utters it.' "

In *State v. McAlister*, 133 S. C., 99, 130 S. E., 511, where the accused contended the confession was obtained by physical violence, it was held that the rights of the defendant were soundly safeguarded by the following instruction given to the jury:

" 'The question is whether the statement was made freely and voluntarily, and, unless it was free and voluntary, you ought to disregard it and pay no attention to it. It is for you to say if either (defendant) made a confession, and, if so, whether it was made under duress and in fear; if it was, disregard it; otherwise, if it was made freely and voluntarily, you give it such weight as it has on your mind.' "

■ In the case at bar it was vital to the rights of the defendant that the omitted element of the definition as to what makes a confession voluntary, should have been given to the jury. The record discloses that the defendant was not offered any inducement by way of benefit or reward to make the alleged confession. The accused testified that he was beaten; that the confession was coerced, and he made it in fear. But this element, which was the one stressed by the defense, was overlooked by the judge in defining what constituted a voluntary confession. It is conceivable that the jury might have concluded that the trial judge had intentionally withdrawn this phase of the matter from their consideration. We think his failure to give a complete definition of what makes a confession voluntary constituted reversible error, which requires that the case be remanded for a new trial.

Judgment reversed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES STUKES, TAYLOR and OXNER concur.