16693

STATE v. LIVINGSTON

(73 S. E. (2d) 850)

2

*Mr. Hugo S. Sims, Jr.,* of Orangeburg, *for Appellant.*

*Mr. Julian S. Wolfe, Solicitor,* of Orangeburg, *for Respondent,*

December 15, 1952.

TAYLOR, Justice.

Appellant was tried and convicted of the crime of murder at the May, 1952, term of General Sessions Court for Orangeburg County and sentenced to be executed as provided by law.

The indictment in this case charged the appellant, Calause Livingston, Clarice Parlor and Junior Perry jointly with the murder of one Tom Cartin on or about March 30, 1952. Upon the case being called for trial, motion was made and granted for a severance and continuance on behalf of Junior Perry for the purpose of committing him to the State Hospital for a mental examination. Motion was then made for a continuance and severance of the case of Clarice Parlor which was refused and a motion was then made and refused for a continuance in behalf of the appellant on grounds which will be hereafter discussed. The defendants, Livingston and Parlor, were placed on trial which resulted in a verdict of guilty as to Clarice Parlor with the jury recommending mercy. Such verdict carries a mandatory sentence of life imprisonment. The verdict as to appellant was guilty (the jury not recommending mercy) making it mandatory that he be sentenced to death by electrocution; and he now appeals to this Court contending: first, that it was error for the trial Judge, over defendant's objections, to permit the introduction of defendant's confession into the evidence in that it was not voluntarily obtained and, therefore, in violation of the defendant's rights under the Fourteenth Amendment of the Constitution of the United States. Second, that the trial Judge erred in refusing to grant his motion for a directed verdict of not guilty in that the evidence was insufficient to sustain the verdict without the illegally obtained confession. Third, that the trial Judge erred in charging the jury that it is "my duty to rule upon whether or not it (the confession) should be admitted into evidence and yours to say what weight and effect should be given to it once it has been admitted" in that the jury had the right to reject the confession if it came to the conclusion that the confession was not voluntary. Fourth, that the trial Judge erred in refusing, under the circumstances, to grant the defendant's motion to continue the case.

The testimony shows that all of the persons involved in this case, together with the deceased, Tom Cartin, lived in

a small community near North, South Carolina; that on the evening of March 30, 1952, at approximately 10 o'clock P. M., a car was observed driving in to the old Cartin home place, from the highway, which was near where Tom Cartin lived with his sister. The horn was sounded and Tom Cartin left his brother and sister and proceeded toward the car carrying with him his flashlight. He was not seen or heard from until April 2, 1952, when his body was found in a stream several miles away. The finding of the body was reported to the sheriff and an investigation followed. The deceased had suffered multiple blows about the head, several of which were sufficient to cause death and was identified as Tom Cartin by his sister. The investigation continued unabated from this date but no arrest was made until April 10, 1952, when appellant was taken into custody at his home and carried to Columbia, S. C., approximately forty miles distance, to the headquarters of the State Constabulary.

It has been established that a great portion of the upholstery in appellant's car had been cut out and was missing and stains were found on the remaining portion which appeared to be blood. The flashlight which Mr. Cartin carried with him at the time of his death was found burned and in a field behind appellant's barn. He stated to the officers that the spots in his car were blood spots but that they were there as a result of his children bleeding at the nose because of whooping cough. While being questioned at the Constabulary headquarters, he stated that his car had been used in the robbery and murder by Clarice Parlor and Junior Perry but that he had nothing to do with it other than lending them his car. As a result of this statement Clarice Parlor and Junior Perry were arrested by the Orangeburg County authorities and appellant was brought back to North by the State Constabulary for the purpose of being confronted by Perry and Parlor who were brought there by the officers of Orangeburg County. The presence of the officers together with the prisoners in this small community attracted some attention. In order to have privacy and to be in the vicinity un-

der investigation, the officers drove to and out on the runway of the airport. All three talked freely of their part in the crime stating that appellant first struck the deceased with a stick while in the car at the old home place; that during the struggle the deceased and appellant got out of the car where deceased was struck on the head with a brick by Junior Perry, his money taken from his pockets and divided three ways by appellant, his body placed in appellant's car and carried to Jerusalem Creek and thrown into the stream by the three at a point several yards upstream from where it was found. Appellant stated that several days after he had divided the money, Parlor asked him to keep his share for him and he buried it in a tin can at the base of a tree. He then directed officers to the place where they found the can containing $60.00. He also related that he had burned the deceased's hat and the brick with which he was struck and thrown the brick under his house. After making these statements, appellant requested that he be permitted to visit his home so that he could see his family and tell his wife what he had done. This request was granted and he was permitted to see them before returning to Columbia that night. He further told the officers that they had previously planned to kill the deceased and that this was the third time they had been to see him that day; that they were buying whiskey from him and that all were drinking at the time of the slaying. The amount taken from the person of Mr. Cartin was $250.00 and on the ground at the scene of the killing as described by appellant was found a fifty cent piece, a dime and three pennies.

These statements were made shortly after dark at the North Airport. After they were checked and he had visited with his family, appellant was returned to Columbia; and shortly after midnight at the Constabulary Headquarters, he signed the confession as it appears in the record, he being given a copy and signing a receipt therefor.

In deciding the question of fact as to whether a confession is free from threat or inducement, the conduct of the officer

will be rigidly scrutinized as to whether appellant was threatened, abused, mistreated or any coercive methods used to bring about a confession. There is no evidence in this case of any prolonged questioning without food or rest or his being refused permission to see his family or counsel. There is evidence that he was carried in the nighttime to the vicinity of the crime where his presence attracted some attention. He was then carried to the airport where in order to facilitate their investigation a conference was held between the officers and appellant was confronted by those he had named as the perpetrators of the crime and were later indicted as codefendants.

Under the rule in this state the question of whether or not a confession is voluntary is addressed to the Court in the first instance, and if there be any reasonable doubt in the mind of the presiding Judge as to the character of the confession or if the evidence is conflicting, the jury must be the final arbiter of such fact. *State v. Brown,* 212 S. C. 237, 47 S. E. (2d) 521; *State v. Scott,* 209 S. C. 61, 38 S. E. (2d) 902; *State v. Melton,* 186 S. C. 478, 196 S. E. 181; *State v. Peden,* 157 S. C. 459, 154 S. E. 658; *State v. Danelly,* 116 S. C. 113, 107 S. E. 149, 14 A. L. R. 1420; *State v. Rogers,* 99 S. C. 504, 83 S. E. 971. In *McNabb v. United States,* 318 U. S. 332, 63 S. Ct. 608, 87 L. Ed. 819, it is stated:

"In deciding the question of fact whether such a confession is free from threat or inducement, the conduct of the officer will be rigidly scrutinized, but the conclusion of the circuit Judge on that issue of fact cannot be reviewed by this court unless so manifestly erroneous as to show an abuse of judicial discretion." See *State v. Henderson,* 74 S. C. 477, 55 S. E. 117, also, *State v. Miller,* 211 S. C. 306, 45 S. E. (2d) 23.

The testimony is undisputed that the appellant was in nowise threatened or abused and that the information was freely and voluntarily given. The officers testified that appellant was carried to the airport as a place of

privacy in the vicinity of the crime where the accuracy of the statements could be more readily checked and we are of the opinion that this alone is not sufficient to say that the trial Judge abused his discretion in refusing to characterize the written confession as not having been made voluntarily but under duress as a matter of law. It therefore follows that questions one and two must be resolved against the contention of appellant.

The third question posed by appellant's exceptions related to the charge contending that it was error for the trial Judge to charge that it was his "duty to rule upon whether or not it (the confession) should be admitted into evidence and yours to say what weight and effect should be given to it once it has been admitted." There is no merit in this contention and this question is also resolved against appellant. See *State v. Brown,* 212 S. C. 237, 47 S. E. (2d) 521.

The last question presented is whether or not the trial Judge erred in refusing to grant defendant's motion for a continuance. Applications for continuance are addressed to the sound discretion of the Court and it is well established that the trial court's ruling in granting or refusing the motion for a continuance in criminal cases will not be disturbed in the absence of a clear showing of an abuse of such discretion. *State v. Mishoe,* 198 S. C. 215, 17 S. E. (2d) 142; *State v. McDonald,* 184 S. C. 290, 192 S. E. 365; *State v. Crosby,* 88 S. C. 98, 70 S. E. 440; *State v. Edwards,* 86 S. C. 215, 68 S. E. 524; *State v. Franklin,* 80 S. C. 332, 60 S. E. 953; *State v. Williams,* 76 S. C. 135, 56 S. E. 783.

Appellant's counsel states that while he was in the process of preparing the defense of another case, he was appointed by the trial Judge "three or four" days prior to the date of trial to represent appellant who was not financially able to procure counsel; that although he was admitted to practice law in 1947, he had not been very active

in such practice until a few months before this case was called for trial by reason of the fact that he had been in the armed services and busy in politics (being a member of Congress from his District). No notice of motion for a change of venue was given or affidavits of any sort filed with the Court, but such position appears to have rested upon counsel's contention that the limited time in which he had to prepare the case was insufficient under the circumstances. The murder was committed March 30, 1952; appellant was arrested April 10, 1952; and was tried on May 12, 1952. The statements of counsel to the effect that because of his limited experience and the short time in which he had to prepare the case appellant was denied a fair and impartial trial appear to be statements of his own conclusion rather than of fact. It was within the discretion of the trial Judge as to whether or not the reasons given for a continuance were sufficient and we cannot say that he abused his discretion and committed an error by law in refusing appellant's motion. On the other hand, it ·is difficult to see how appellant's counsel could have done more on behalf of his client under the circumstances and he is to be commended for his diligent efforts. It was the duty of counsel to see that his client received a fair and impartial trial with the view that justice shall be done under the law. There is a noticeable lack of contradictory evidence in this case. Appellant was twenty-nine years of age while Parlor and Perry who were charged with him as accomplices were eighteen and sixteen years of age respectively. He, according to the undisputed evidence, owned the car, drove it on its fatal mission, struck the first as well as other blows, helped rob and dispose of the body, divided the money and attempted to destroy the evidence such as cutting the blood stained upholstering from his car and burning it along with the brick, hat and flashlight. Under the circumstances it is difficult to see how counsel could have done more when it is undisputed that appellant's confession was freely and voluntarily made.

We are of the opinion that all exceptions should be overruled and the judgment appealed from affirmed and it is so ordered.

BAKER, C. J., and FISHBURNE, STUKES and OXNER, JJ., concur.