## 16908

### THE STATE v. ARTHUR WAITUS, ALIAS FATEYE
### (83 S. E. (2d) 629)

*Messrs. Harold R. Boulware,* of Columbia, and *Vernoid R. Bunch,* of Georgetown, *for Appellant,*

J. *Reuben Long, Solicitor,* of Conway, *for Respondent.*

Sept. 14, 1954.

STUKES, Justice.

Rather than repeat them, we incorporate herein the facts of the murder of which appellant, a Negro, has been twice convicted by reference to the opinion (by Mr. Justice Oxner) in the appeal from the first conviction. *State v. Waitus,* 224 S. C. 12, 77 S. E. (2d) 256, 264.

At the end of it was the following: "In concluding this opinion, we desire to recognize the conscientious and able manner in which counsel for appellant, who served without compensation, have discharged their duties. The arduous task imposed upon them has been skillfully handled." After the verdict of guilty was returned in the second trial, which is presently under review and motions for judgment *non obstante veredicto* and for new trial were denied, the counsel petitioned to be relieved upon their considered conclusion that there was no reversible error in the trial and that two other attorneys had been drawn into the case by members of appellant's family, who were thereupon substituted as counsel by order of the court and they perfected the appeal. The order concluded as follows: "It is Further Ordered, that it is the duty of the Court to recognize the services rendered by the Court-appointed attorneys, J. Shephard Thompson, Meyer C. Rosen and C. C. Grimes, Esqs., wherein their said services have been extra burdensome, both in the rendering of their services and their expenses that they have entailed and which they were required to bear. Their services are worthy of the high traditions of our profession, and this Court expresses its appreciation and commends said attorneys for the fine manner in which they have discharged their professional duties."

The exceptions which were taken in behalf of appellant by the substituted counsel follow:

1. That the Court committed error in allowing the introduction of the pair of shoes allegedly found in the defendant-appellant's living quarters when the defendant-appellant was not present and allowing in evidence any testimony relating to the pair of shoes.

2. That the Court committed error in admitting the alleged confession of the defendant-appellant since the *corpus delicti* had not been established.

3. That the Court committed error in refusing to direct a verdict and allowing the case to go to a jury when the *corpus delicti* had not been established.

4. That the Court committed error in allowing the introduction of the alleged confession of the defendant-appellant.

5. That the Court committed error in admitting in evidence the alleged confession of the defendant-appellant and allowing testimony relating to the contents thereof.

However, upon argument of the appeal counsel disregarded the most of the stated exceptions and filed a well-prepared brief, supported by full oral arguments, which was limited to the following questions:

A. Did the Court err in trying and convicting the appellant, in violation of his state and federally protected rights, after his presence in the jurisdiction has been obtained by fraud, force or violence practiced upon him by state officers?

B. Did the Court err in admitting into evidence the alleged confession of the appellant and allowing testimony relating to the contents thereof?

In keeping with our invariable rule of *in favorem vitae, State v. Scott,* 209 S. C. 61, 38 S. E. (2d) 902; *State v. Taylor,* 213 S. C. 330, 49 S. E. (2d) 289, 16 A. L. R. (2d) 1317, we have not only considered the above original exceptions (the most of which would otherwise and ordinarily be deemed to have been abandoned by failure to argue them) and the questions briefed and

orally argued in this court, but we have also independently searched the record for prejudicial error, whether or not made the ground of exception or question, and we find none.

The first conviction was reversed and appellant was granted a new trial because of the absence of members of his race from the grand and petit juries. Thereafter a newly-drawn grand jury, which included several members of the Negro race, returned an indictment; and appellant was arraigned for trial before a petit jury panel which contained Negroes, one of whom was accepted for service and was a member of the trial jury which again convicted the appellant.

We proceed to consider the exceptions and questions involved in the instant appeal.

Exceptions 2 and 3 challenge the sufficiency of the proof of the *corpus delicti*, which in the crime of murder consists of (1) the death of a human being and (2) the causative, criminal act or agency of another. *State v. Thomas,* 159 S. C. 76, 156 S. E. 169; *State v. Epes,* 209 S. C. 246, 39 S. E. (2d) 769; *State v. Thomas,* 222 S. C. 484, 73 S. E. (2d) 722; 41 C. J. S. 5, Homicide, § 312. Here the hidden, lifeless body of the victim was found a few hours after death; and post-mortem examination by experts, including a medical college professor, disclosed external and internal proof of death by strangulation which resulted from the application of external force. Manifestly, the proof of the *corpus delicti* in this case was beyond reasonable doubt.

Exceptions 2, 4 and 5 and question B assign error in the admission in evidence of the confession which was signed by the appellant twelve days after his accusal and arrest. Again, we adopt the relevant contents and conclusion of our opinion upon the first appeal. After statement of the evidence relating to the obtention of the confession, and there is no contention of material variance in it at the second trial, we said:

"It is readily seen that the evidence is in sharp conflict as to the voluntariness of this alleged confession. Under

the rule which prevails in this State, the question of whether or not the confession is voluntary is one which is addressed to the Court in the first instance, but if the evidence with respect thereto is conflicting, the jury must be the final arbiter of such fact. Under the circumstances of this case, we think the trial Judge properly submitted this issue to the jury. *State v. Miller,* 211 S. C. 306, 45 S. E. (2d) 23; *State v. Brown,* 212 S. C. 237, 47 S. E. (2d) 521. The facts here are readily distinguishable from those in *State v. Harris,* 212 S. C. 124, 46 S. E. (2d) 682, where a majority of this Court held that the issue of the voluntariness of the confession was properly submitted to the jury, but the United States Supreme Court reversed. 338 U. S. 68, 69 S. Ct. 1354, 93 L. Ed. 1815. Neither can it be said that the circumstances under which the confession was received violate those fundamental principles of liberty and justice which are protected by the Fourteenth Amendment against infraction by any State. *Gallegos v. State of Nebraska,* 342 U. S. 55, 72 S. Ct. 141, 96 L. Ed. 86."

The first exception is concerned with the reception in evidence of a pair of shoes. After appellant fled his home other occupants of the house consented to search of it by investigating officers and in appellant's bedroom they found the shoes. Appellant, who testified, did not deny his ownership of them; but offered testimony that they were of a type in common use in the community. They fit the tracks which were found in soft ground at the scene of the crime and an officer, who was experienced in identification, testified to distinguishing features of the shoes which indicated that they made the tracks, of which latter casts were in evidence. Under these circumstances, they were admissible in evidence. *State v. Griffin,* 129 S. C. 200, 124 S. E. 81, 35 A. L. R. 1227. Annotation, 31 A. L. R. 204.

There remains for consideration question A, that first presented in the brief and stressed in oral argument, in which it is charged that appellant was returned to the State by fraud, force or violence, which was

practiced upon him by the officers, whereby the conviction of appellant should be reversed and set aside, and he be freed from custody. The question imputes facts more favorable, from appellant's viewpoint, than the record supports. When the sheriff of Georgetown County arrested appellant across the North Carolina line he was armed with a warrant which charged appellant with the murder of which he has been convicted; and the sheriff was accompanied by a deputy sheriff of the North Carolina county in which the arrest was made. Appellant submitted to arrest and return to this State without resistance or protest. But that feature of the case need not be further dwelt upon because it is immaterial, as will be seen upon consideration of the relevant decisions of the State and Federal courts, to which we now turn.

It would be a work of supererogation to review, or even cite in detail, the many authorities on this subject for it was recently, thoroughly done in the annotation in 165 A. L. R. 947, upon which we shall freely draw.

It is virtually a universal rule of law that where a person accused of a crime is found within the territorial jurisdiction wherein he is so charged, and is held under process legally issued from a court of that jurisdiction, neither the jurisdiction of the court nor the right to put him on trial for the offense charged is impaired by the manner in which he was brought from another jurisdiction, whether by kidnapping, illegal arrest, abduction, or irregular extradition proceedings.

The basic principle supporting the rule is that when a person accused of a crime is held under valid process in the proper forum, such detention is not rendered invalid because of the illegality of the events which preceded, or which made the detention physically possible. From this principle, other lines of reasoning have been developed to meet the various arguments raised in opposition to the rule. Thus, it has been reasoned that where there is a detention of an accused under legal process, his wrong against the

state holding him is not to be condoned because of violence or wrong committed against his person by individuals who brought him into the jurisdiction by force or other illegal means, even though such individuals may be subject to civil or criminal liability for their unlawful acts.

A fugitive from justice has no vested right of asylum in the state or country to which he has fled in the absence of provision therefor under either existing treaties or Federal statutory or constitutional provisions relating to extradition, and thus cannot attack the jurisdiction of the court to try him upon the ground that he was forcibly abducted or otherwise illegally returned to answer the criminal charge against him, in violation of such right of asylum.

The fact that under the Constitution and laws of the United States a fugitive from justice from one state to another can be surrendered to the demanding state upon proper proceedings taken does not give a fugitive the right of asylum in the state to which he fled unless removed in conformity with such proceeding, since the laws do not recognize any such right of asylum, and no provision is made for the return of parties who, by violent means or without lawful authority, have been abducted from the asylum state to the jurisdiction where their prosecution is sought.

The numerous supporting decisions, State and Federal, for the foregoing postulates may be readily found by reference to the cited annotation. See also 14 Am. Jur. 919, Criminal Law, Sec. 217, and 22 C. J. S., Criminal Law, § 146, p. 242.

Apparently the only decision of the Supreme Court of the United States since the above A. L. R. Annotation is *Frisbie v. Collins,* 1952, 342 U. S. 519, 72 S. Ct. 509, 511, 96 L. Ed. 541, in which it was attempted to obtain modification of the established rule perforce the effect of the Federal Kidnapping Act, 18 U. S. C. A. § 1201. The contention was rejected by the court which said in its unanimous opinion,

by Mr. Justice Black: "This Court has never departed from the rule announced in *Ker v. [People of State of] Illinois,* 119 U. S. 436, 444, 7 S. Ct. 225, 229, 30 L. Ed. 421, that the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.' No persuasive reasons are now presented to justify overruling this line of cases. They rest on the sound basis that due process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will. * * * We think the Act cannot fairly be construed so as to add to the list of sanctions detailed a sanction barring a state from prosecuting persons wrongfully brought to it by its officers. It may be that Congress could add such a sanction. We cannot."

In the older, leading case of *Mahon v. Justice,* 127 U. S. 700, 8 S. Ct. 1204, 32 L. Ed. 283, heavy reliance was had upon, and there was lengthy quotation from, our early case of *State v. Smith,* 1829, 1 Bailey 283, 19 Am. Dec. 679, in which the well-reasoned order of the lower court, by Chancellor Harper, was published in full along with the opinion of the Court of Appeals; the latter concluded: "The prisoner is an offender against our laws, and to them he owes atonement." The case involved, as does that in hand, the return of a defendant from North Carolina, and likewise for a capital offense. It was also cited with approval in *Ker v. People of State of Illinois, supra,* 119 U. S. 436, 7 S. Ct. 225, 30 L. Ed. 421, and *Pettibone v. Nichols,* 203 U. S. 192, 27 S. Ct. 111, 51 L. Ed. 148. Our *State v. Smith, supra,* may thus itself be properly said to be a leading case. The holding of it is accurately summarized in 7 S. C. Dig. 409, as follows:

"It is no ground for the discharge, or exemption from punishment, of a person who has been guilty, within the

limits of this State, of an offence agains its laws, that he was subsequently arrested with lawless violence in the territory of another State and brought within this State in violation of the jurisdiction of the State, in which he was arrested. In whatever manner he is brought within the jurisdiction of this State, he is responsible for his previous violation of its laws; nor is his punishment a cause of offence to the State in which he was arrested; but the true cause of offense to that State is the violation of its territory, for which those who were guilty are alone responsible."

The rule was interestingly applied in reasoning in *Lascelles v. State of Georgia,* 148 U. S. 537, 13 S. Ct. 687, 689, 37 L. Ed. 549, by which it was established that a defendant may be tried in the demanding State for a crime other than that for which he was extradited, and surrendered by the rendering State. It was there said by the Court: "But it is settled by the decisions of this court that, except in the case of a fugitive surrendered by a foreign government, there is nothing in the constitution, treaties, or laws of the United States which exempts an offender, brought before the courts of a state for an offense against its laws, from trial and punishment, even though brought from another state by unlawful violence, or by abuse of legal process. *Ker v. [People of State of] Illinois,* 119 U. S. 436, 444, 7 S. Ct. 225 [30 L. Ed. 421]; *Mahon v. Justice,* 127 U. S. 700, 707, 708, 712 [715], 8 S. Ct. 1204 [32 L. Ed. 283]; *Cook v. Hart,* 146 U. S. 183, 190, 192, 13 S. Ct. 40 [36 L. Ed. 934]."

From all of the foregoing we conclude without difficulty and beyond doubt that this last and major point of the appeal is, like the others, without merit.

In the absence of prejudicial error in the indictment and trial of appellant, the conviction and sentence must be, and they are, affirmed.

TAYLOR, OXNER and LEGGE, JJ., and M. M. MANN, Acting Associate Justice, concur.