17585

STATE, Respondent, v. Quincy BULLOCK, Appellant

(111 S. E. (2d) 657)

*Messrs. Matthew J. Perry,* of Spartanburg, *Lincoln C. Jenkins, Jr.,* of Columbia, and *Donald James Sampson,* of Greenville, *for Appellant,*

*Messrs. Robert L. Kilgo, Solicitor,* of Darlington, *S. Norwood Gasque,* of Latta, and *William H. Smith, Jr.,*

*Assistant Attorney General,* of Columbia, *for Respondent,*

November 16, 1959.

Moss, Justice.

The appellant, Quincy Bullock, was tried upon an indictment charging him with the murder of Mrs. Carolyn Barfield Walshock on August 3, 1958. He was tried on October 24, 1958. The appellant was found guilty as charged and sentenced to death by electrocution.

This appeal followed. The appellant charges error on the part of the trial Judge: (1) In refusing his motion for a continuance; (2) In allowing the introduction into evidence of the alleged confessions of the appellant, it being asserted that the said confessions were obtained in violation of the

rights of the appellant under the due process clause of the Fourteenth Amendment of the United States Constitution; and that the officers who took the written confession failed to comply with Sections 1-64 and 26-7.1 of the 1952 Code of Laws of South Carolina; (3) In admitting into evidence the slip, dress, pocket book and contents, of the deceased; (4) In admitting as evidence a bullet taken from the body of one Jimmy Horne and allowing testimony concerning the commission of a crime against the said Horne; and (5) In permitting evidence that when the body of the deceased was found it was without undergarments, and in allowing testimony of the physician who examined the body of the deceased that there was some discharge from her vagina.

Upon the call of this case for trial, the appellant moved for a continuance beyond the term upon the ground that his counsel had not had sufficient time in which to prepare for trial. This motion was refused and the appellant alleges error. The body of the deceased was discovered on the afternoon of August 3, 1958, in the woods near Maple Swamp, a distance of approximately 3/4 of a mile from the Latta Highway in Dillon County, South Carolina. The appellant was arrested on August 7, 1958. The State asserts that the appellant did on August 11, 1958, give to the investigating officers two written statements wherein he confessed that he had killed the deceased, and he gave in the statements the details of how he took the life of the deceased.

It appears from the record that on August 26, 1958, the Honorable J. Woodrow Lewis, Resident Judge of the Fourth Circuit, did issue an order committing the appellant to the South Carolina State Hospital for observation and examination as to his sanity. It further appears that as a result of such examination, at the end of thirty days, the appellant was found sane, and a report to that effect filed in the office of the Clerk of Court for Dillon County, on September 30, 1958. It also appears from the record that on August 26, 1958, that Honorable J. Woodrow Lewis, Resident Judge of the Fourth Circuit, did appoint two able

and competent attorneys of Dillon to represent the appellant. These attorneys received written notification from Judge Lewis, in the form of a letter, on August 28, 1958, appointing them to represent the appellant. Counsel for the appellant had notice of the findings of the South Carolina Hospital as to the sanity of the appellant on either October 4 or 5, 1958. It appears that after the completion of the examination of the appellant at the State Hospital he was held as a prisoner in the State Penitentiary. On October 7, 1958, counsel for the appellant, by letter, requested the Solicitor to have "the Sheriff of Dillon County bring the defendant back to the Dillon County jail several days prior to the convening of the General Sessions Court". In the same letter these attorneys requested a copy of the alleged confessions made by the appellant On the day following, the Solicitor directed the Sheriff to bring the appellant back to the Dillon County jail so that his attorneys would have full opportunity to confer with him and prepare his defense. The Solicitor also directed the Sheriff "to make available to them all statements, confessions, and evidence in our hands". There is no contention on the part of the appellant that he was not returned to the Dillon County jail in sufficient time to confer with his counsel, nor is it claimed that the State failed to furnish to his counsel a copy of all statements, confessions, and evidence in the hands of the officers. Counsel for the appellant stated in their joint affidavit that they found the appellant to be highly suspicious of them and reluctant to talk to them. They state that he desired other attorneys to represent him but such attorneys were unavailable. This same affidavit shows that on October 16, 1958, that the appellant gave to his attorneys information which repudiated the alleged confessions made by him and asserted that "he was nowhere near the scene of the alleged crime at the time it was alleged to have been committed". Attorneys for the appellant assert that the case should have been continued because they had not had sufficient time to adequately prepare the defense of the appellant.

The appellant's defense was one of alibi. He made no showing on the motion for continuance of the absence of any witness who would be material to the establishment of this defense. As a matter of fact, the appellant testified upon the trial of the case that on the night of the homicide that he was alone from about midnight until approximately six o'clock the following morning. We do not see how it is possible, if the appellant was alone during this period of time, for him to obtain witnesses to corroborate this fact.

The appellant also suggests that the witness, Jimmy Horne, should have been present for the trial of this case. Examination of the record reveals that Jimmy Horne was with the deceased on the night of the homicide. He was not present at the time of the trial for the reason that he was a patient in a hospital suffering from injuries in an automobile accident. It is the State's position that this witness could not be considered a defense witness because his full testimony was given at a coroner's inquest, which, from an examination thereof, shows that he could not in any sense be a witness for the appellant. The appellant does not contend that he wished to call Jimmy Horne as a witness in his behalf nor that he had made any attempt to interview such witness.

It appears to us that since counsel for the appellant had been appointed to defend him on August 26, 1958, and received notice thereof on August 28, 1958, and that the appellant was made available to them certainly prior to October 16, 1958, and there being no contention that they were not furnished with all statements, confessions and evidence in the hands of the State concerning this homicide, they had had ample time to prepare this case for trial. The appellant does not suggest the absence of any witness material to his defense.

This Court has held in numerous cases that a motion for a continuance is addressed to the discretion of the trial Judge and his disposition of such motion will not be reversed on appeal unless it is shown that there

was an abuse of discretion to the prejudice of the appellant. *State v. Lytchfield,* 230 S. C. 405, 95 S. E. (2d) 857, 66 A. L. R. (2d) 263; *State v. Livingston,* 223 S. C. 1, 73 S. E. (2d) 850; *State v. Mishoe,* 198 S. C. 215, 17 S. E. (2d) 142; and *State v. Livingston,* 233 S. C. 400, 105 S. E. (2d) 73, 76. We quote from the last cited case, the following: .

"A motion for continuance is, of course, addressed to the sound discretion of the court. Where such motion has been based upon the contention that defendant's counsel has not had time to prepare his case, its denial by the trial court has rarely been disturbed on appeal. It is axiomatic that determination of such motions must depend upon the particular facts and circumstances of each case. In *State v. Middleton,* 207 S. C. 478, 36 S. E. (2d) 742, where counsel, appointed by the court at least eight days prior to the trial, moved for continuance upon the ground that they did not think that time sufficient for preparation of the case for trial, we held that the motion was properly denied. And in *State v. Livingston,* 223 S. C. 1, 73 S. E. (2d) 850, 853, denial of a like motion was upheld where counsel for the defendant had been appointed by the court 'three or four' days prior to the date of trial."

The appellant asserts that under the *Livingston case,* from which we have quoted, that he was entitled to a continuance. An examination of this case shows that we expressed grave doubt as to whether the trial Judge abused his discretion in denying the motion for a continuance. However, we concluded, *in favorem vitae,* where the motion for a continuance was on the ground that there was a man residing in Colorado who could testify as to defendant's mental condition during combat service in the Korean War, a new trial should be granted. There is no showing in the instant case of the absence of any witness material to the appellant's defense. We conclude that there was no error on the part of the trial Judge in refusing the motion of the appellant for a continuance.

We next consider the question of whether there was error in permitting the introduction into evidence of the alleged confessions of the appellant.

In the case of *State v. Chasteen,* 228 S. C. 88, 88 S. E. (2d) 880, 884, it was said:

"The question of whether a confession is voluntary is one which is addressed to the Court in the first instance. If there is an issue of fact as to the voluntariness of a confession, it should be admitted and the jury, under proper instructions, allowed to make the ultimate determination as to its voluntary character and also its truthfulness. *State v. Scott, supra,* 209 S. C. 61, 38 S. E. (2d) 902; *State v. Brown, supra,* 212 S. C. 237, 47 S. E. (2d) 521; *State v. Livingston, supra,* 223 S. C. 1, 73 S. E. (2d) 850."

It is axiomatic that a confession is not admissible unless it is voluntary. It necessarily follows that the burden rests upon the State to show that it was voluntary, and there is no presumption of law that it was voluntary. *State v. Clinkscales,* 231 S. C. 650, 99 S. E. (2d) 663, and *State v. Fuller,* 227 S. C. 138, 87 S. E. (2d) 287.

We have also held that the mere fact that a confession is made while the accused is in the custody of an officer does not render it inadmissible. However, the conduct of the officer obtaining the confession will be rigidly scrutinized and the fact that it is made while the accused is under arrest is a circumstance, along with the other facts and circumstances to be taken into consideration by the jury in determining its voluntariness. *State v. Clinkscales, supra.*

In the case of *State v. Henderson,* 74 S. C. 477, 55 S. E. 117, 118, it is stated:

"In deciding the question of fact whether such a confession is free from threat or inducement, the conduct of the officer will be rigidly scrutinized, but the conclusion of the circuit judge on that issue of fact cannot be reviewed by this court unless so manifestly erroneous as to show an

abuse of judicial discretion." See *McNabb v. United States,* 318 U. S. 332, 63 S. Ct. 608, 87 L. Ed. 819, also, *State v. Miller,* 211 S. C. 306, 45 S. E. (2d) 23, and *State v. Livingston,* 223 S. C. 1, 73 S. E. (2d) 850.

When the State offered the confessions of the appellant in evidence a prompt objection was made to such admission by counsel for him. The trial Judge then excused the jury, and in the absence thereof, heard the testimony of the officers concerning the circumstances of the confessions. These officers testified positively that the appellant was not at any time intimidated, abused or threatened. They further testified that his confessions were freely and voluntarily given.

The record shows that when the question of admissibility of the confessions arose, and after the jury had been excused, the Sheriff of Dillon County was examined by the Court as a witness. We quote from the record the questions asked by the Court and the answers given by the Sheriff:

"Q. Let me ask you this. If any statement was made to you by the defendant, was any force used in getting him to make a statement? A. No, sir.

"Q. Was any promise made—A. No, sir.

"Q. (Continues) to him?

"Q. By you or anyone in your presence? A. No, sir.

"Q. Was any hope held out to him if he would make a statement? A. No, sir.

"Q. Was he put under any threat? Was any threat made to him? A. No, sir.

"Q. Was there any act of violence committed toward him by you or anyone in your presence? A. No, sir.

"Q. Was any promise made to him? A. None, sir.

"Q. That if he would tell you, certain things may be done for him? A. No, sir.

"Q. Was any threat made against him at any time? A. No, sir.

"Q. Did any officer or any other person have his hands about the defendant or try to force the defendant or put fear in the defendant at any time in your presence? A. No, sir.

"Q. If he did make a statement, was it free and voluntary? A. It was, sir."

After the Sheriff had been examined by the trial Judge he was extensively cross examined by counsel for the appellant. The testimony of the Sheriff was corroborated by a deputy Sheriff who typed the confessions of the appellant. It should be pointed out that while the trial Judge was making the preliminary examination as to whether or not the confessions were admissible as evidence the appellant was not called to the stand to refute or deny the testimony of the Sheriff and the deputy as to the voluntariness of the confessions, nor did the appellant call any other witness to testify thereabout. The record reveals that prior to the time the trial Judge admitted the confessions into evidence, that he charged the jury that it was their duty and responsibility to determine if the confessions had been made by the appellant, and if found to have been made freely and voluntarily, without fear or reward, or hope of reward, or the slightest fear or slightest hope of reward, or without duress, then the jury should give to them such weight as they deem proper. He also charged the jury that if they found that the statements had been involuntarily made, that they should not consider them. With this charge and admonition to the jury, the trial Judge admitted the confessions into evidence. We find no error in so doing.

In the case of *State v. Sanders,* 227 S. C. 287, 87 S. E. (2d) 826, 829, the defendant was indicted for murder. An objection was made to the admission of a confession on the ground that the same was involuntary. The accused testified that he was cursed and threatened by one of the officers, which was denied by that officer, and his denial was corroborated by other officers, and by the stenographer who took the confession in shorthand and transcribed the same. The notes were produced at the trial, as well as the

signed transcript which was admitted in evidence. The trial Judge, in the absence of the jury, heard the testimony of the appellant and one of the officers concerning the circumstances of the confession, and concluded that it was admissible. Upon appeal to this Court, it was said:

"In the absence of the jury the court first heard the testimony of appellant and one of the officers concerning the circumstances of the confession and concluded that it was admissible; however, he submitted to the jury the issue of whether it was free and voluntary and, therefore, whether it should be considered or rejected by them. This was the proper procedure and there was no error thereabout. *State v. Carson*, 131 S. C. 42, 126 S. E. 757; *State v. Scott*, 209 S. C. 61, 38 S. E. (2d) 902; *State v. Miller*, 211 S. C. 306, 45 S. E. (2d) 23; *State v. Brown*, 212 S. C. 237, 47 S. E. (2d) 521, *certiorari* denied 335 U. S. 834, 69 S. Ct. 22, 93 L. Ed. 386; *State v. Livingston*, 223 S. C. 1, 73 S. E. (2d) 850, *certiorari* denied 345 U. S. 959, 73 S. Ct. 944, 97 L. Ed. 1379; *State v. Waitus*, 224 S. C. 12, 77 S. E. (2d) 256; *Id.*, 226 S. C. 44, 83 S. E. (2d) 629, *certiorari* denied 348 U. S. 951, 75 S. Ct. 439, 99 L. Ed. 743."

It appears from the record that at the time the State offered the confessions of the appellant in evidence, the sole testimony before the trial Judge was that such confessions had been voluntarily made by the appellant. There was no testimony to the contrary. The procedure outlined in the case of *State v. Sanders, supra,* had been followed, except the appellant had not availed himself, nor was he required to do so, of the opportunity through his own testimony, or that of other witnesses, to contradict the *prima facie* showing made by the State as to the voluntariness of the confessions. The issue of the voluntariness of the confessions was made when the appellant took the stand during the presentation of his defense, to deny that he had freely and voluntarily made the confessions.

The appellant asserts that the admission into evidence of his alleged confessions violated his right to due process un-

·der the Fourteenth Amendment to the Constitution of the United States.

As is heretofore stated, the dead body of Mrs. Carolyn Barfield Walshock was discovered on August 3, 1958. The appellant, a negro man, forty-six years of age, an employee of a restaurant, was arrested at his home on August 7, 1958. He was not questioned on the date of his arrest. However, on Friday morning, August 8, 1958, according to the testimony of the State, the appellant was questioned for a few minutes. The testimony was that on Friday afternoon at about 2:30 or 3:00 o'clock, the officers questioned the appellant, removing him for such purpose from the new jail to the old jail of the county. He was questioned for about thirty to forty minutes. It appears that a number of people had gathered near the old jail and the officers took the appellant to the office of the Judge in the Courthouse, interrogating him there for about an hour to an hour and fifteen minutes. The appellant admitted the ownership of a pistol after he had been told that the officers knew that he had purchased a pistol from one Rowell. The record shows that Rowell testified on the trial of this case that he sold to the appellant the pistol in question. It further appears that a sister-in-law of the appellant was called in while the appellant was being questioned in the office of the Judge, and told the appellant about seeing him with a pistol. It appears that after this happening the officers went with the appellant to his home and there the officers obtained the pistol from behind a loose piece of ceiling in the wall between the ceiling and the weather boarding under the window in the appellant's bedroom. It appears that the appellant had not admitted the shooting of the deceased at this time. At the end of the interrogation in the Judge's office, the appellant was removed from the Dillon County jail to the jail of adjoining Marion County. On the way from Dillon to Marion the car in which the appellant was riding was momentarily stopped at a motel to pick up one of the investigating officers. Upon arrival at the Marion County jail yard the appellant

made an oral confession. The Sheriff testified that he went back to the Marion County jail on Saturday and Sunday and talked to the appellant. It appears from the testimony that on Sunday night, August 10, 1958, the Sheriff with one of his deputies brought the appellant back from Marion to Dillon, and that they stopped by the cemetery where the alleged shooting took place and he pointed out the road that he traveled in approaching the car in which the parties were at the time of the shooting. It appears that on August 11, 1958, the appellant signed his first confession, wherein he stated that at about 1:00 o'clock A. M., on the morning of August 3, 1958, he went to the Mount Holly cemetery on the old Latta highway, entering through the main gate and took the first road to the left around the circle to where a car was parked. He says that when he got to the car "I pulled out my mess (pistol) and started shooting." Two people ran from the car and the girl called to the boy to wait. The appellant says that he cut across the cemetery towards the old Latta highway and came out on the highway and started walking towards Latta when he came upon a woman standing there. He says that she called him to come and go with her. He says that at this time she was bleeding from the chin. He went up with her on the sewage line on the right of the old Latta highway and through the swamp to the edge of a cornfield. The woman went under the edge of some vines near the cornfield and sat down, where she remained for about an hour. He says that he was standing behind her to the right. He also says that about daylight, when he was about two feet from her, he took the gun out of his pocket and fired one time into her head; that he left her there and came out of the woods across a cotton patch and hit the old road. He details how he traveled to a store where he bought a pepsi-cola and asked a white boy to call a taxi; that he met the taxi as he was walking towards town; that the taxi driver took him home to change his clothes and waited so that he could take him to his place of work. When he arrived at work

he found that he was late and his employer had obtained someone to take his place. He returned home and stayed there the rest of the day. This confession was executed in the presence of Sheriff Jasper D. Rogers and Deputy Sheriffs Allen and Anderson.

It appears that after the appellant had signed the foregoing confession that he accompanied the officers for the purpose of reconstructing the crime. After he had returned from this trip he signed a second statement, wherein he says that he instructed the Sheriff the place to put the car in the cemetery. He says that he showed how the back doors to the car were open and how the two were lying in the back seat with their heads pointing in the same direction. He also stated what position he was standing in when he fired into the car and pointed out the route that he took up the sewage line. He was then taken to the point where the body was found and in about five minutes pointed out the spot where he left the body. He says that he placed Deputy Allen in the position the girl was sitting when he shot her in the head, and that he then led the officers back out of the swamp through the edge of the field along the route that he took when he left the place where the body of the deceased was found. This confession was executed in the presence of Sheriff Jasper D. Rogers and Deputy Sheriff H. A. Allen.

Each of the foregoing statements acknowledged that they had been read to him by "Mr. Rogers", the Sheriff, and that he had received a copy of such statement.

The testimony of the officers is that after the statements, or confessions, were written out and that they were read slowly to the appellant, and that he agreed to the correctness of such statements and signed same. It was also testified that he was given a copy of the statements so signed.

The appellant testified that he signed the confessions after two cotton sheets had been placed over his head and he had suffered a severe beating, and had been kicked by the officers. He says that as a result of the beating he was crippled in

his hip. There was also testimony by the wife of the appellant that the appellant had been beaten and because thereof "he couldn't half walk" and his face was swollen to the extent that his left eye was almost closed. The appellant asserts that he put his name on the confessions because he was fearful of what might happen to him if he didn't. He says that when he was taken to the cemetery and to the place where the body of the deceased was found that "I point out anywhere" "so they wouldn't get ahold of me no more". The appellant also denied receiving copies of the statements which he signed. This testimony in behalf of the appellant, as to the treatment he had received prior to the signing of the confessions, was emphatically denied by the officers. It was also testified in behalf of the State that the appellant, without assistance from anyone, pointed out the spot where he left the body of the deceased near the swamp.

The evidence relating to the voluntariness of the confessions of the appellant is in sharp conflict. The officers testified that the confessions were freely and voluntarily given. The appellant's testimony is that the confessions were involuntary. Under the testimony we think the trial Judge properly submitted the issue of voluntariness of the confessions to the jury. *State v. Waitus,* 224 S. C. 12, 77 S. E. (2d) 256. Neither can it be said that the circumstances under which the confessions were obtained violate those fundamental principles which are protected by the Fourteenth Amendment to the Constitution of the United States. *Gallegos v. State of Nebraska,* 342 U. S. 55, 72 S. Ct. 141, 96 L. Ed. 86; *Stein v. People of State of New York,* 346 U. S. 156, 73 S. Ct. 1077, 97 L. Ed. 1522.

The appellant asserts that he was held *incommunicado* from the time of his arrest on Thursday, August 7, until August 11. The record does not confirm this contention. It appears that while the appellant was in custody he saw his wife and sister-in-law. There is an absence of testimony that anyone sought to see the appellant and was refused such right, nor does the record show that the appellant re-

quested to see any person and such privilege was refused. It appears that counsel for the appellant fully examined all witnesses and no attempt was made to show that the appellant had been held *incommunicado*.

The appellant also asserts that he was continuously questioned by the officers. This is not confirmed by the record. It does appear from the record that the appellant, after minimum questioning, made an oral confession within twenty-four hours after his arrest. We have heretofore recited the period of questioning and there is no necessity for a repetition of such at this point.

The appellant contends that he was moved from one place to another and finally to a jail in an adjoining county, all in the presence of a large number of officers and under the threat of mob violence. It is true that the appellant was questioned at several different places but it does not appear that this fact in anywise influenced the making of the confessions by the appellant. As to the threat of mob violence, it is a sufficient answer to quote the testimony of the appellant thereabout.

"Q. Were there any people on the outside of the jail that you saw? A. No, sir, I didn't see none.

"Q. Any crowd around the jail? A. No, sir."

The confession of the appellant is corroborated in a number of details. The appellant says that when he went into the cemetery he saw a car parked and started shooting. The parked car was found in the cemetery at the place pointed out by the appellant and there were bullet holes in the car. The appellant states that he saw the people running towards the gate after he had shot. The evidence is that there were spots of blood found on the old Latta highway. The appellant says in his confession that this woman was standing on the old Latta highway and she was bleeding. The blood spots were found 75 to 100 yards from where the automobile was parked in the cemetery. The appellant admits in his confession that he went up the sewage line with the

deceased. Along this route was found a woman's slip. It had the appearance of having blood on it and a bullet hole through it. It further appears that the appellant, even though he denied it, pointed out the place where he took the life of the deceased. The testimony of the officers confirm the fact that the body of the deceased was found at the place pointed out by the appellant. The appellant says that he was standing behind and about two feet from the deceased while she was sitting on the ground. The physician who examined the body of the deceased said that she had on a dress without any underclothing. He also testified that the deceased had multiple gun shot wounds on the body, one of which entered the skull, another at right angle of the jaw, and the third, the posterior or back aspect of the right thigh. He further testified that the bullet wound of the mouth was laterally started at the right side of the jaw, fracturing the jaw and coming out through the left angle of the mouth. He further testified that whoever fired the shot had to be above the deceased. The appellant also says in his confession that after he shot the deceased that he came out across some fields and finally along a road to Tyler's store, and there he had a white boy call a taxi for him. He says he started walking towards town and met the taxi and was taken home to change his clothes, the taxi waiting while he did this, and then he was transported on to the place where he worked. This taxi driver confirms the receipt of a message to pick up a passenger at Tyler's store and that before he got to the store that he met the appellant walking. The appellant flagged the taxi down and told him that he had called from Tyler's store. The taxi driver testified that he carried the appellant to his home, where the appellant changed clothes. He says that after the appellant had changed his clothes he transported the appellant to his place of employment. He also testified that the appellant's clothes were "wet from the knees down". The appellant also, in his second statement, says that he led the officers out of the swamp, through the fields, and up to Tyler's store where he had the taxi called.

The appellant also complains that the officers taking his confessions did not comply with Sections 1-64 and 26-7.1 of the 1958 cumulative supplement to the 1952 Code of Laws of South Carolina.

Section 1-64 provides:

"Whenever any person employed by the State or any county, city or municipality thereof, or any part of any such governing body, shall take a written statement in any investigation of any kind or nature from any person, the person receiving or taking the written statement shall give to the person making the statement a copy thereof and shall obtain from the person making the statement a signed receipt for the copy so delivered."

Section 26-7.1 provides:

"No witness in any preliminary hearing or in any criminal judicial proceeding of any kind or nature shall be examined or cross-examined by any examiner, solicitor, lawyer or prosecuting officer concerning a written statement formerly made and given to any person employed by the State or any county, city or municipality thereof, or any part of any such governing body, unless it first be shown that at the time of the making of the statement the witness was given an exact copy of the statement and that before his examination or cross-examination the witness was given a copy of the statement and allowed a reasonable time in which to read it."

The appellant testified that he did not receive a copy of his confessions at the time he signed same. The testimony on behalf of the State was that the appellant was given copies of the confessions at the time he signed same. The confessions themselves admit receipt of the copies. Thus it appears that the question of compliance with Sections 1-64 and 26-7.1 of the Code became a factual issue for the jury to decide. The trial Judge submitted this factual issue to the jury with appropriate instructions thereabout. He likewise submitted to the jury the question of whether

or not the confessions of the appellant were freely and voluntarily made. The jury was also instructed that if they were not so made they must be disregarded. He further instructed the jury that if they found as a fact that the confessions were freely and voluntarily made, and that the appellant had received a copy of same, then they could give to the confessions such weight as the jury deemed proper.

We should point out in connection with the objection made by the appellant to the admission into evidence of his confessions, that the appellant as a part of his defense offered in evidence copies of the confessions which had previously been introduced in behalf of the State. The appellant offered these confessions generally and without any limitation upon his purpose in offering same.

In the case of *State v. O'Neal,* 210 S. C. 305, 42 S. E. (2d) 523, 526, this Court said:

"An objection to the admission of evidence is waived where the same or similar evidence has been elicited by the objector. 64 C. J., Sec. 193, Page 172. Under this well known rule, the appellants are in no position to complain of the court's ruling."

We find no error on the part of the trial Judge in admitting as evidence the confessions of the appellant.

The next question for determination is whether the Court committed error in admitting into evidence a slip, dress, and a pocket book and contents.

When the State offered in evidence the slip alleged to be that of the deceased, counsel for the appellant objected to it being described as the property of the deceased. He stated "We have no objection to its being admitted as the slip found in the woods". Thereupon, the following took place:

"The Court: All right, sir.

"Mr. Britt: But we do have objection to the witness' stating who the slip belonged to.

"The Court: It will be admitted as the slip found in the woods.

"Motion to Strike—Mr. Britt: Then, if the Court please, we move that his answer as to whose slip it was be stricken from the record.

"The Court: The motion is granted."

When the State offered the dress in evidence, counsel for the appellant stated "We have no objection except to the container which has the name upon it". The appellant is not in position to complain of the introduction of the slip and dress as evidence when he expressly consented thereto, as the above quote shows.

The introduction of the pocket book and its contents had a material bearing on the issue involved in the trial of the appellant. It was testified that this pocket book was found in the car in the cemetery. There is evidence that the pocket book and its contents belonged to the deceased. The introduction of this exhibit tended to establish the presence of the deceased in the car in the cemetery. It· likewise tended to corroborate the confession of the appellant that the deceased was the "girl" who ran from the car when the appellant fired shots into the car. The admission of this evidence was proper as tending to establish a material fact in the case. We find no error on the part of the trial Judge in admitting the slip, dress and pocket book into evidence.

The appellant alleges that it was error on the part of the trial Judge to admit into evidence a bullet removed from the body of one Jimmy Horne, since such tended to prove the commission of a crime against the said Horne.

A witness, John Bowen, testified that he lived near the Mt. Holly Cemetery and that about 1:35 A. M. on August 3, 1958, Jimmy Horne came to his house and woke him up; that Horne had a bullet wound in his shoulder and blood on his shirt; that the witness and Horne alerted the

officers and returned to the cemetery and made a search for the deceased. There was no testimony of any statement made by Horne to the witness. The confession of the appellant says that when he shot into the car which was in the cemetery, two people ran therefrom. He identified one as a "boy" because he says "he heard this girl calling to the boy to wait". What we have heretofore said shows that there was evidence that the deceased was in the cemetery and there was also present an unidentified male. The fact that Horne returned with the witness, Bowen, to the car in the cemetery and was making a search for the deceased, is some evidence that Horne was the one present in the cemetery with the deceased at the time the appellant shot into the car. It is not contended by the appellant that Horne was not present with the deceased in the cemetery.

It appears from the testimony of one Dr. J. S. Garner that he removed a bullet from the shoulder of Horne. The testimony shows that the bullet removed from Horne was finally delivered to the witness, M. N. Cate, a ballistics expert with the South Carolina Law Enforcement Division. There was likewise testimony that the pistol which was recovered from the home of the appellant, and admitted by the appellant as being his property, was also delivered to this ballistics expert. Cate testified that he fired test shots into a bullet trap and recovered these test bullets to compare with the bullet removed from the body of Jimmy Horne. He says that as a result of the test so made that the bullet removed from the shoulder of Jimmy Horne was fired from the pistol of the appellant. In this connection we point out that it was also testified that a bullet was removed from the body of the deceased but that it was so badly damaged that the witness Cate could not, with any degree of certainty, testify that it was fired from the pistol of the appellant. This witness did testify, however, that the bullet removed from the deceased was shot from a pistol with the same lands and grooves as the appellant's pistol.

In the case of *State v. Thompson,* 230 S. C. 473, 96 S. E. (2d) 471, 472, the Court said:

"The general rule is that evidence that the accused has committed another crime independent of, and unconnected with, the one on trial is inadmissible. 22 C. J. S. Criminal Law § 682, p. 1084. And especially is this true where the other offense is remote in time. To this rule there are certain exceptions. However, as stated at 22 C. J. S. Criminal Law § 683, p. 1091, 'the general rule should be strictly enforced, in all cases where applicable, because of the prejudicial effect and injustice of such evidence, and should not be departed from except under conditions which clearly justify such a departure; so, these exceptions should be carefully limited, and their number and scope not increased.'

"The recognized exceptions are set forth in the cases of *State v. Gregory,* 191 S. C. 212, 4 S. E. (2d) 1, and *State v. Lyle,* 125 S. C. 406, 118 S. E. 803, 807, as follows: 'Evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial.' "

We think that there was no error in admitting into evidence the bullet removed from the body of Horne, even though such tended to prove the commission of a crime against him. The evidence was admissible to prove the identity of the appellant as the perpetrator of the crime charged against him. *State v. Gregory, supra,* and *State v. Pittman,* 137 S. C. 75, 134 S. E. 514. The evidence likewise corroborated the confession of the appellant that he was in the Mt. Holly Cemetery and fired shots into the automobile occupied by a man and woman. The shooting of the man and woman occurred at the same time and the proof that the bullet removed from the body of Horne was fired from the gun of the appellant tended to establish the fact that who-

ever shot Horne also shot the deceased. The evidence also was admissible because it tended to show that the appellant was in the vicinity at the time of the commission of the crime charged. It has also been held by this Court that evidence which is relevant to establish the guilt of the accused of the crime charged is not rendered inadmissible by the fact that it incidentally proves or tends to prove him guilty of another and distinct crime. *State v. Gregory* and *State v. Lyle, supra.* We conclude that there was no error in admitting into evidence the bullet removed from the body of Horne because such tended to prove the commission of a crime against him.

When Dr. W. V. Branford was on the witness stand, he testified that on August 3, 1958, he examined the body of the deceased at a funeral home. He was asked by the Solicitor to tell the jury what such examination revealed. In reply, he stated the deceased was twenty-five to thirty years of age, weighing about one hundred pounds, and that when he examined her she was lying on a slab clothed in a dress "without underclothing". He further testified that her body was covered with mud and dirt; that she had multiple bruises and abrasions about her body and multiple gun shot wounds of the body, one of which entered the skull, another the right angle of the jaw and the third the posterior or back aspect of the right thigh. He further testified that the examination showed that the deceased had a scar on her abdomen as the result of an operation in the past. He further testified that "she also had some serosanguineous, some bloody serous, discharge from the vagina". The appellant asserts that the testimony relative to the deceased being without undergarments and having some discharge from the vagina was prejudicial and was calculated to inflame and prejudice the jury against him.

There was no objection interposed by the appellant to the introduction of the foregoing testimony, nor was the physician cross examined by counsel for the appellant. We consider the question even though timely objection was not

made. We have held that in order to constitute reversible error, in the admission of testimony, the accused must be prejudiced thereby, and the burden is upon him to satisfy this Court that there was prejudicial error. *State v. Glover,* 91 S. C. 562, 75 S. E. 218; and *State v. Smith,* 230 S. C. 164, 94 S. E. (2d) 886.

The appellant asserts that the admission of the foregoing testimony tended to create in the minds of the jury the inference that the accused had committed the crime of rape upon the deceased. The record is bare of any attempt on the part of the State to show that the deceased had been raped. The record is likewise bare with reference to the vagina of the deceased, other than in the physician's description of her body when he examined it. Taking the testimony, which the appellant alleges to be harmful to him, in connection with the whole testimony of the physician, does not in our judgment create the inference asserted by the appellant. We find no error.

What we have heretofore said disposes of all questions raised by the appellant, but in keeping with our invariable rule of *in favorem vitae,* we have carefully examined the record for any errors affecting the substantial rights of the appellant, even though not made a ground of appeal. We find no such errors.

Judgment of the lower Court is affirmed.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.