16067

STATE v. BROWN

(47 S. E. (2d) 521)

*Messrs. Murchison & West,* of Camden, and *Allen M. Sapp,* of Columbia, for Appellant,

*Mr. 7. P. Taylor*, Solicitor, of Columbia, for Respondent,

April 14, 1948.

OXNER, Justice:

Appellant, John Brown, was jointly indicted with Russell Brown, Isaac Hill and R. B. Bennett, for the murder of Edward Speights. The last three named defendants were also charged with being accessories before and after the fact. The case was tried at the February, 1947, term of the Court of General Sessions of Kershaw County. At the conclusion of the State's testimony, the trial judge granted a motion for a directed verdict as to Russell Brown, Isaac Hill and R. B. Bennett. He refused a similar motion in behalf of appellant who was found guilty of manslaughter and sentenced to imprisonment for a term of twelve years.

The State relied almost entirely on alleged confessions by the defendants to sustain the charges in the indictment. The trial Judge held, and it is conceded, that the evidence apart from the alleged confessions of appellant was insufficient to warrant his conviction. The questions to be determined on this appeal are stated in appellant's brief as follows:

"I. Did the admission in evidence of certain statements purporting to be confessions of appellant's co-defendants constitute error?

"II. Did the evidence show as a matter of law that the purported confession of the appellant was involuntary, therefore inadmissible?

"III. Did the treatment accorded appellant amount to such a denial of due process of law as to render his purported confession inadmissible?"

Appellant and Russell Brown are brothers. The deceased, Edward Speights, was a brother of appellant's wife. Shortly after midnight on Sunday, August 25, 1946, a passing motorist observed a man lying on U. S. Highway No. 1 about three miles north of Blaney. A highway patrolman was notified and, along with the coroner of Kershaw County, immediately commenced an investigation. Between 1:30 and 2:00 a. m. they found Edward Speights lying across the pavement on the right side of the road in traveling toward Camden with his head near the center of the highway. There was a small amount of blood on the pavement near a cut on one of his hands. The highway patrolman and coroner took him to the hospital at Camden and immediately returned to the scene for the purpose of continuing the investigation. All of the defendants, as well as Speights and his parents, lived in this vicinity. A number of Negroes, including several of the defendants, were interrogated. They found appellant at a nearby tobacco barn about 3:00 a. m. where he and some other Negroes were curing tobacco. It developed during this investigation that Speights had been driving appellant's car during the previous afternoon and the early part of that night. The car was found that morning lying in a ditch along the highway at Blaney. The officers became suspicious of Russell Brown and Isaac Hill and some time that Sunday afternoon placed them in the county jail at Camden where they were held for investigation. These defendants, as well as all the other Negroes interviewed, denied any knowledge of the occurrence.

Speights never regained consciousness after being carried to the hospital. He died on the morning of August 27, 1946,

or a little more than 48 hours after he was found on the highway. The physician who performed the autopsy testified that the only external evidence of injury which he found was an incised wound about a half-inch long on the thumb of the left hand, a small cut on the third finger of the right hand and a bruised area about half an inch in diameter beneath the right eye, all of which were of a superficial nature. The autopsy, however, revealed a bruised place inside of the scalp. This physician was of the opinion that Speights died from the result of a blow on the head by some blunt instrument and that the injury which caused his death could not have resulted from an automobile striking him or from an automobile accident.

Appellant was arrested without a warrant around noon on September 10, 1946, and carried by the officers to Columbia where he was turned over to the police authorities and placed in the city jail. These officers testified that the county jail at Camden was so constructed that if appellant had been placed there, any interrogation of him could have been easily overheard by Isaac Hill and Russell Brown, and that it was necessary to detain appellant at a place where he could be examined without the knowledge of the two defendants mentioned. According to the State's evidence, appellant remained in the jail at Columbia without being interrogated until about 10 o'clock the next morning, at which time Deputy Sheriff McLeod and another deputy sheriff of Kershaw County, who had driven over from Camden, proceeded to question appellant in one of the offices at police headquarters. The Chief of Detectives and two city detectives were also present. These officers testified that after Deputy Sheriff McLeod had talked to appellant for about twenty or thirty minutes, he stated that his conscience had been hurting him during the night and he wanted to tell the truth; that he thereupon made a free and voluntary confession and after doing so, was taken into another office where a clerk was called to take down the statement; that appellant's statement was then reduced to writing, read over to him, and he

signed same before a notary public. Omitting formal parts, this statement is as follows:

"On Saturday night, I think about three weeks ago, August 24, 1946, I left my house and went down the road looking for Edward Speights, my brother-in-law. I was looking for my car too. I met Edward about 200 yards down the highway, and I asked him why he took my car and where it was. We started fussing and he jumped on me, and I hit him across the head with a stick. He fell to the ground and lay there. Russell Brown and Isaac (Hill) walked up and helped me put him in the highway. I was scared and I left him there, and went back to the tobacco barn where the police found me."

After this statement was signed, the Kershaw County officers carried appellant to Camden where he was placed in the jail in which Russell Brown and Isaac Hill were detained. The defendant Bennett was arrested that night and also placed in the same jail.

About 9 or 10 o'clock p. m., two deputy sheriffs, one of whom was present that morning when the confession was made in Columbia, and a rural policeman interviewed appellant. This rural policeman, who was with the officers when appellant was arrested on the previous day, testified that he asked appellant that night why he didn't tell him on the trip to Columbia that he had struck the deceased, to which appellant replied: "I wanted to think further about it." One of these deputy sheriffs testified that he asked appellant at this time whether he had told the truth in Columbia and appellant answered: "No I didn't, not altogether. I didn't hit him with a stick. I hit him with a piece of iron." According to the testimony of these officers, they asked him what he did with the iron and he said that it was at his house where it was used to prop up a window; that at their request, appellant then freely went along with them to the house where about midnight they took possession of the piece of iron which the State claims was used in inflicting the

fatal blow; and that as they held it before a light, he said: "There is nothing on it; I washed it off when I got home that night."

The next morning four or five of the officers visited the jail and interrogated all of the defendants together. A stenographer from the County Treasurer's office was also present to take down any statement made. (It appears to be conceded that Russell Brown, Hill and Bennett continued to deny any knowledge of the crime until after appellant was brought back to the Camden jail). According to the testimony of these officers, all of the defendants that morning gave statements substantially in accord with the confession made by appellant in Columbia except that several of them thought appellant hit Speights with an iron instead of a stick, as stated in the confession in Columbia, and said that appellant struck Speights four or five times. Bennett further stated during this interrogation that he went by the tobacco barn on the night of the alleged crime and jokingly said to appellant that "Edward Speights had wrecked his automobile." According to the State's evidence, Russell Brown and Hill admitted in their statements that after Speights had fallen on the pavement, they assisted appellant in placing his body across the road so that it would appear "that an automobile had come by and run over it and make it appear that he got hurt by the automobile." The officers said that as each defendant concluded his statement, no comment was made by the other defendants. All of these statements were taken down by the stenographer but before they could be transcribed, a lawyer was permitted to visit the defendants at the jail and when the statements were carried to the defendants later during the day, they refused to sign them.

Appellant denied that he committed the offense charged or that he had any connection with it and offered evidence in support of an alibi to the effect that on the Saturday night in question he remained almost continuously at the tobacco barn helping his father-in-law cure tobacco. He contended that he signed the statement in Columbia through fear and

intimidation. He testified that he was kept in the Columbia jail two nights; that twice each night he was carried by the Columbia police to the office where he was cursed, beaten with clubs and blackjacks, kicked and slapped in an effort to get a confession; that on the morning of the second day, Sheriff McLeod and another deputy came over from Camden and commenced interrogating him but he continued to deny any knowledge of the crime; that they then told him that if he would confess he would receive a lighter sentence and when he refused, Deputy Sheriff McLeod told him that if he didn't confess, he would be turned back over to the Columbia police who would whip him again; and that finally in fear of being further mistreated by the Columbia officers, he decided to sign the alleged confession which had already been prepared. Appellant further testified that on the night after he was brought back to the Camden jail, several Kershaw County officers threatened to whip him again and throw him in the river unless he produced the piece of iron with which he struck the deceased, and through fear of further brutal treatment, he went with the officers to his house where they procured a piece of iron which he says had no connection with the crime. He denied making any statement whatever to the officers at Camden the next morning.

Deputy Sheriff McLeod and several other officers in reply testimony denied abusing or mistreating appellant in any manner. Chief of Detectives Rawlinson testified that under the rules of the police department, none of the police could have talked to appellant while in the Columbia jail without his permission and that he gave no one permission to do so. The testimony of all of the officers was to the effect that appellant only remained in the Columbia jail one night and not two nights as he contended.

We have not undertaken to review all of the testimony contained in this voluminous record, consisting of approximately four hundred typewritten pages. We think, however, that we have given a rather full summary of that portion which is material to the questions we are called upon to determine.

We shall first discuss the question of whether the Court erred in admitting statements made to the officers by appellant's codefendants. It is apparently conceded that if these statements were properly admitted, the jury was adequately instructed and cautioned that any such statement could only be considered as against the defendant making it. Appellant's contention is that under the case of *State v. Mitchell,* 49 S. C. 410, 27 S. E. 424, these so-called confessions were inadmissible for any purpose because none of them incriminated the maker. We do not think · the statements of Russell Brown and Isaac Hill can be so classified. They contained an admission that they assisted appellant in placing Speights' body across the highway so that it would appear that he had been injured by an automobile. But the statement of Bennett was not inculpatory. It did nothing more than place him at the scene of the alleged crime. Its admission, however, does not constitute reversible error for two reasons: (1) Several of the officers testified to the alleged verbal statement of Bennett before there was any objection upon the ground that it did not incriminate him. The first objection upon this ground was made when the State subsequently offered in evidence a written statement alleged to have been signed by Bennett. Later when the State again undertook to prove by one of the officers Bennett's alleged verbal statement, the Court sustained the objection. It was-incumbent upon appellant to make this objection when the testimony complained of was first offered. (2) When the testimony of the State was concluded, the Court of its own motion ordered the written statement of Bennett stricken from the record because it had not been connected up by other testimony. During the charge, the Court instructed the jury that any statements made by appellant's codefendants could not be considered at all since these defendants had been eliminated from the case. Any error on the part of the Court was subsequently cured when the testimony complained of was stricken from the record and the jury instructed to disregard it. *State v. James,* 34

S. C. 49, 12 S. E. 657; *State v. Green,* 121 S. C. 230, 114 S. E. 317; *State v. Singleton,* 167 S. C. 543, 166 S. E. 725. The Court further instructed the jury that the evidence apart from the testimony relating to appellant's alleged confessions was insufficient to warrant a conviction, and that unless the jury found that the purported confession of appellant was freely and voluntarily given, he should be acquitted.

The second question is whether the Court below erred in not holding as a matter of law that the purported confessions of appellant were involuntary.

"Under the rule which prevails in this state the question of whether or not a confession is voluntary is one which is addressed to the court in the first instance. However, if there be any reasonable doubt in the mind of the trial judge as to the character of the confession, or if the evidence is conflicting, the jury must be the final arbiter of such fact." *State v. Scott,* 209 S. C. 61, 38 S. E. (2d) 902, 903. Also, see the recent case of *State v. Miller,* 211 S. C. 306, 45 S. E. (2d) 23. The mere fact that a confession is made while the accused is in the custody of an officer does not render it inadmissible. *State v. Judge,* 208 S. C. 497, 38 S. E. (2d) 715. This is also true under the Federal decisions. *McNabb v. United States,* 318 U. S. 332, 63 S. Ct. 608, 87 L. Ed. 819. "In deciding the question of fact whether such a confession is free from threat or inducement, the conduct of the officer will be rigidly scrutinized, but the conclusion of the circuit judge on that issue of fact cannot be reviewed by this court unless so manifestly erroneous as to show an abuse of judicial discretion." *State v. Henderson,* 74 S. C. 477, 55 S. E. 117, 118.

The evidence relating to the voluntariness of appellant's confessions is in sharp conflict. If the testimony of the officers is believed, these confessions were freely and voluntarily given; if appellant's version of the circumstances is accepted, his alleged admissions of guilt were involuntary. We think the trial Judge properly

submitted this issue to the jury. Counsel for appellant argues that he was induced to sign the written statement in Columbia by the promise of Deputy Sheriff McLeod that if he would do so, he would be carried back to Camden. This officer testified that after appellant had freely made a complete confession in Columbia, he said to him: "All right, John go out and tell the clerk of Chief Rawlinson's here exactly what you have told us, and we will go back to Camden." It will be observed that appellant's verbal confession was made before this officer said anything about returning to Camden. Appellant never contended in his testimony that his confession was exacted by any such promise. In addition to this, according to the State's evidence, appellant again confessed after returning to Camden.

The admissibility of appellant's confessions is also attacked upon the ground that the State did not offer as witnesses one of the deputy sheriffs who was present when the alleged confession was made in Columbia and the stenographer who was present when the confession was made at Camden. All others who were present testified. We do not know why these two witnesses were not called. It may be that the Solicitor thought it was unnecessary and would unduly prolong the trial. In any event, the failure on the part of the State to require the testimony of all who were present when an alleged confession is made does not render it inadmissible. *State v. Howard*, 35 S. C. 197, 14 S. E. 481. If appellant had any reason to believe that the testimony of these two witnesses would be favorable to him, he could have required them to testify.

Finally, it is contended that the statement made by appellant that he "washed the blood and hairs off the iron" is contradicted by the physician's testimony that there could have been no blood and hairs on the iron as a result of the blow on Speights' head. This was a circumstance to be considered by the jury but did not go to the admissibility of the evidence. A jury is not required by law to believe

all of a confession. "The jury may accept a part and reject the balance." *State v. Baker,* 58 S. C. 111, 36 S. E. 501, 502. We may add that if there was blood on the iron, it might have come from the superficial wounds found on the deceased.

The third and final question is appellant's contention that the methods used in obtaining this confession cannot be squared with that due process of law which the Fourteenth Amendment of the Federal Constitution commands. He relies on a recent series of cases by the United States Supreme Court, beginning with *Brown v. State of Mississippi,* 297 U. S. 278, 56 S. Ct. 461, 80 L. Ed. 682, in which convictions obtained in the State courts were set aside because they were based on confessions admitted under circumstances which the Court found offended the requirements of the "'due process" exacted from the States by the Fourteenth Amendment. Principally relied on are: *Chambers v. State of Florida,* 309 U. S. 227, 60 S. Ct. 472, 84 L. Ed. 716; *White v. State of Texas,* 310 U. S. 530, 60 S. Ct. 1032, 84 L. Ed. 1342; *Ward v. State of Texas,* 316 U. S. 547, 62 S. Ct. 1139, 86 L. Ed. 1663. These cases, as well as others along the same line, including the recent case of *Haley v. State,* 332 U. S. 596, 68 S. Ct. 302, have been carefully examined and we think are readily distinguishable from the instant case.

Here no question of racial discrimination or prejudice is involved. Both the deceased and all those accused were Negroes. There was no threat of mob violence. The case created no unusual amount of interest. It is not contended that the questioning of appellant on any of the occasions mentioned extended over any long period of time. If we accept the testimony of the State as true, appellant was not abused or mistreated in any manner and there was no interrogation in relays by the officers. The police officers who appellant claimed abused him in Columbia had no particular interest in the case. The alleged physical torture of appellant was not

corroborated by the appearance of his person or clothes. He does not claim that he was denied the right to consult counsel. Permission was readily given to counsel to see the defendants at Camden. It is significant that he does not claim that he was mistreated at Camden on the morning when the State claims he again confessed. He says that he made no statement at all on this occasion. If, as the State contends, he freely confessed at that time, it was done in the presence of his friends, the codefendants, who were not offered as witnesses for the defense.

Appellant contends that the confessions should be excluded because they were made before any warrant was issued. (The warrant was not issued until September 12th, two days after he was arrested). We held in *State v. Miller, supra,* that this fact did not render the confessions inadmissible. It is also said that the placing of appellant in the Columbia jail constituted a violation of Section 1063 of the Code of 1942. Assuming, without deciding, that it did, that fact alone would not render his statements inadmissible. The officers gave a very reasonable explanation of why appellant was taken to the jail in Columbia rather than to Camden after being arrested.

We conclude by saying that the determination of the triers of fact in the case before us is not "so lacking in support in the evidence that to give it effect would work that fundamental unfairness which is at war with due process." *Lisenba v. People of State of California,* 314 U. S. 219, 62 S. Ct. 280, 291, 86 L. Ed. 166.

All exceptions are overruled and the judgment below affirmed.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.