17017

THE STATE, Respondent v. VERNON NED SANDERS, Appellant
(87 S. E. (2d) 826)

*C. E. Strange, Esq.,* of Winnsboro, *for Appellant,*

288

*Robert W. Hemphill, Esq., Solicitor,* of Chester, *for Respondent,*

*C. E. Strange, Esq.,* of Winnsboro, *for Appellant, in Reply.*

June 13, 1955.

STUKES, Justice.

The eighteen-year-old appellant and Frank K. Boulware, fourteen, were jointly indicted for the murder of one Jim Sterling who was eighty-four years old and lived alone in a rural section of Fairfield county—all Negroes. At the trial the defendants were separately represented and after two State's witnesses had testified the Solicitor agreed with counsel for Boulware upon a verdict as to him of guilty with recommendation to mercy; and that defendant later testified for the State. Both defendants had formerly confessed and were then in agreement that appellant struck the fatal blow while Boulware waited outside the home of the deceased. The death of the latter resulted

from a crushing blow on his head which was inflicted by a large, blunt instrument and a bloodstained hammer was found on the porch of, the home. The evidence tended to establish robbery as the motive.

The homicide occurred on a Saturday and the lifeless body was discovered in an inside room of the house on the following Monday afternoon when industrial insurance agents went to collect a premium from the deceased. They called the nearby magistrate and the coroner was summoned. The body was removed to Winnsboro and a physician made a portmortem examination. He testified to the nature and extent of the fatal wound.

At the beginning of the trial, which resulted in the conviction of appellant and the sentence of him to death, the following transpired:

"Mr. Strange: Your Honor, the Defendant Sanders moves to separate the cases. I have learned that there is a difference between the two defendants. One might be testifying against the other, and it would place the defending attorneys in a rather awkward position to cross examine in presentation of these defendants as witnesses, and on that basis, I move to separate the cases.·

"The Court: Mr. Strange, the indictment just charges the two defendants jointly with murder. I can't separate them. I will have to refuse the motion.

"Mr. Strange: All right, your Honor."

The refusal of severance is made a ground of appeal. The point cannot be sustained. Separate trials or severance of defendants jointly indicted is within the sound discretion of the trial court and only abuse of that discretion, which does not appear here, constitutes reversible error. *State v. Brown,* 108 S. C. 490, 95 S. E. 61; *State v. Jeffords,* 121 S. C. 443, 114 S. E. 415; *State v. Bagwell,* 128 S. C. 414, 122 S. E. 513; *State v. Francis,* 152 S. C. 17, 149 S. E. 348, 70 A. L. R. 1133; *State v. Rook,* 174 S. C. 225, 177 S. E. 143; *State v. Mathis,* 174 S. C. 344, 177

S. E. 318; *State v. Atkins,* 205 S. C. 450, 32 S. E. (2d) 372; *State v. McCracken,* 211 S. C. 52, 43 S. E. (2d) 607; *State v. Hurt,* 212 S. C. 461, 48 S. E. (2d) 313; *State v. McIntire,* 221 S. C. 504, 71 S. E. (2d) 410.

As it turned out and by reason of Boulware's consent to verdict of guilty with recommendation of mercy as to him, which came early in the trial, the most of the trial of appellant was separate. Boulware's pretrial confession was not put in evidence although a copy of it was furnished appellant's counsel before the trial. Defense counsel was likewise provided in advance with a copy of appellant's written confession.

Another ground of appeal relates to the admission in evidence of this confession of appellant, which was obtained from him by the officers on the second following Sunday, or eight days, after the homicide.

It is first contended that the confession was inadmissible because it was sworn to by appellant before a notary public. No pertinent cases from this court are cited to the point and appellant relies upon rather old texts which were based upon decisions in other jurisdictions. The following authorities show that the rule upon which appellant relies is obsolete:

"In some cases the broad rule has been laid down that confessions made under oath are involuntary and inadmissible as evidence. Most of these, however, are explained by the fact that they arose prior to statutes making defendants competent witnesses in their own behalf, and with the removal of the disqualification of the accused as a witness for himself, the reason for the rule ceased. It is now generally recognized that an extrajudicial confession is not rendered inadmissible by virtue of the fact that it was made under oath, since the confessor is in no sense a witness. Thus, the fact that the confession was taken down in writing and sworn to by the accused does not affect the admissibility thereof. Such a confession does not become a deposition in

a judicial proceeding, and hence, a constitutional provision that the defendant in a criminal case shall not be compelled to be a witness against himself can have no application. A confession under oath may be an extrajudicial confession although made before a judge or magistrate, if the court is not in session at the time." 20 Am. Jur. 450, Evidence, Sec. 527. To the same effect is 22 C. J. S., Criminal Law, § 832, p. 1455.

An interesting discussion is found in Volume 3 of the 3d Edition of Wigmore on Evidence, page 302, section 849. It is shown that the origin of the doctrine lay in the early English statutes which first allowed an accused to testify at his trial, but he was not to be put on oath. This was construed as a prohibition against putting the accused on oath, whereby a confession under oath was inadmissible. The learned author concludes as follows: "But the reason was, not that there was anything fatal in the oath as such (as will be seen in next section), but simply that the statute forbade the administration of the oath, and by implication prevented the admission of statements obtained in the way thus specifically forbidden. It was thus not the oath, but the specific statutory illegality of its application, that prevented the admission; for there was no method of enforcing the prohibition except by rejecting the statement so obtained."

Without the historical background for the rule, there is no reason for the following of it in this jurisdiction. Apart from that, it would seem that the solemnity of the oath would add to the trustworthiness of a written confession. Moreover, in this case appellant voluntarily testified at the trial for which purpose, as other witnesses, he was of course put on his oath. His present contention is without merit. Compare *State v. Judge*, 208 S. C. 497, 38 S. E. (2d) 715, 718, where objection was made to the admission in evidence of a confession because it was not verified by the oath of the defendant, and we said: "It is not necessary that a written confession or statement be sworn to by the party

making same, if it be properly proven that the statement was made by such party freely and voluntarily."

A further ground of appeal is that the confession was involuntary and, therefore, inadmissible, for which the appellant mainly relies upon *Harris v. State of South Carolina,* 338 U. S. 68, 69 S. Ct. 1354, 93 L. Ed. 1815, which reversed, by closely divided opinions, *State v. Harris,* 212 S. C. 124, 46 S. E. (2d) 682. The facts of the case in hand clearly and convincingly distinguish it from the cited case. Here there were no prolonged periods of questioning, day and night, by relays of numerous officers.

Appellant was taken into custody late Tuesday after the homicide on the preceding Saturday and was confined in the county jail until Friday when he was taken after breakfast to the headquarters of the State Law Enforcement Division near Columbia and questioned during portions of that day but returned to the county jail for his evening meal. He was again taken by county officers to the State office on the following Sunday morning at about ten o'clock and the questioning of him by the officers was not unduly long. Appellant, himself, testified that there was not much questioning at the county jail and that at the State office on Friday he was questioned, quoting, "for a pretty good while." On Sunday the questioning was interrupted by the noon meal, which appellant ate, and after lunch the confession was obtained, reduced to writing and subscribed and sworn to by appellant, and witnessed by several county and State officers. He was furnished a copy which he said he had read several times. It is inferable that appellant's confession was more readily secured because Boulware had confessed on the day before.

Appellant testified that he was cursed and threatened by one of the State officers (all other officers treated him well, he said) which was denied by that officer and his denial was corroborated by the other officers, State and County, and by the stenographer who took the confession in shorthand

and transcribed her notes. The notes were produced at the trial, as well as the signed transcript which was admitted in evidence. The co-defendant, Boulware, testified in effect that no improper means were used to secure his confession.

In the absence of the jury the court first heard the testimony of appellant and one of the officers concerning the circumstances of the confession and concluded that it was admissible; however, he submitted to the jury the issue of whether it was free and voluntary and, therefore, whether it should be considered or rejected by them. This was the proper procedure and there was no error thereabout. *State v. Carson,* 131 S. C. 42, 126 S. E. 757; *State v. Scott,* 209 S. C. 61, 38 S. E. (2d) 902; *State v. Miller,* 211 S. C. 306, 45 S. E. (2d) 23; *State v. Brown,* 212 S. C. 237, 47 S. E. (2d) 521, certiorari denied 335 U. S. 834, 69 S. Ct. 22, 93 L. Ed. 386; *State v. Livingston,* 223 S. C. 1, 73 S. E. (2d) 850, certiorari denied 345 U. S. 959, 73 S. Ct. 944, 97 L. Ed. 1379; *State v. Waitus,* 224 S. C. 12, 77 S. E. (2d) 256; Id., S. C., 83 S. E. (2d) 629, certiorari denied 348 U. S. 951, 75 S. Ct. 439.

The confession of the appellant in this case was corroborated by the testimony of the other participant in the crime, Boulware, and by circumstantial evidence. For instance of the latter, appellant identified the hammer which he used to strike the fatal blow and selected it without aid from a number of such which were placed before him at the time of his confession. The evidence adduced by the State, aside from the confession, was ample to convict. It may be added that appellant is not illiterate, having reached the tenth grade in school.

Although it was not requested by appellant's counsel at the trial he argued on appeal that appellant was prejudiced by the failure of the trial judge to order the sequestration of the State's witnesses, at least the co-defendant, for which motion would have been made had separate trials been ordered. In support of this position there

is cited only *State v. Williams,* S. C., 85 S. E. (2d) 863. However, that case is not authority here. It involved the unusual fact that the defendant's witnesses were prisoners in the custody of the county chain gang guards who were State's witnesses, and it was held to have been reversible error of the trial judge to refuse a motion for separation of the witnesses under those exceptional circumstances. The present irrelevancy of the case is patent.

Because this is a capital case we have carefully considered the entire record in search of error which was prejudicial to appellant, whether or not the ground of exception, and we have found none. He had a fair trial. His court-appointed counsel is commended for his zeal and ability in conducting the trial defense and in the presentation of the appeal.

Judgment affirmed.

TAYLOR, OXNER and LEGGE, JJ., concur.

BAKER, C. J., did not participate.