**STATE of Missouri, Respondent,**

v.

**Larry FAIR, Appellant.**

**No. 55400.**

Supreme Court of Missouri,
En Banc.

May 10, 1971.

Rehearing Denied June 28, 1971.

John C. Danforth, Atty. Gen., Jefferson City. Charles B. Blackmar, Spec. Asst. Atty. Gen., St. Louis, for respondent.

Raymond Howard, St. Louis, for appellant.

BARDGETT, Judge.

Defendant was indicted and subsequently found guilty by a jury of murder in the first degree. The jury assessed punishment at death and the court entered judgment and sentence in accordance with the verdict. Defendant's motion for new trial having been overruled, he now appeals. The sufficiency of the evidence is not questioned. Because of the disposition we must make of this appeal, an abbreviated statement of facts will suffice. On December 4, 1968, about 6:00 p. m., Mike LoGrasso, the owner of Mike's Restaurant, was the subject of an armed robbery in which four robbers participated and during which Mike LoGrasso was shot to death by Walter Berry, one of the robbers. A customer was then robbed and Berry shot him also.

Defendant filed a motion to suppress any alleged statements on the grounds they were made involuntarily, that they were the fruit of an illegal arrest, that they were made without adequate advice as to his right to counsel and his right to remain silent, or without an intelligent waiver of his rights.

On December 8, 1968, at about 9:00 a. m., defendant was arrested at his home. Upon being arrested and in response to interrogation while in custody at his home, and without having been advised of any rights—"Miranda warnings", defendant, according to the arresting officer, said he figured he was being arrested for being

implicated in the Mike LoGrasso holdup and killing but that he did not kill him. Defendant was taken to the police station where, according to the testimony of the interrogating officers at the hearing on the motion to suppress the confessions, he was advised that he had a right to remain silent and not make any statements, that any statement he might make could and would be used against him in court on a charge of murder; that he had a right to have an attorney present before and during the questioning at any time; that if he was unable to afford the services of an attorney one would be provided for him prior to any questioning. The officer testified that defendant said he understood his rights, but that he had not shot anyone and he wanted to tell a true story relative to the holdup and shooting of deceased, and then confessed to participation in the robbery. The confession was admitted in evidence.

Defendant did not testify on the motion to suppress nor at trial, but did attempt to question the police officers and offer evidence during the hearing on the motion to suppress with respect to the legality of the arrest for the purpose of showing that the arrest was without a warrant and without probable cause, and therefore illegal.

The state admitted that the arrest was without a warrant; however, the court sustained the state's objections to questions pertaining to the legality of the arrest and to defendant's offers of proof with respect thereto on the grounds that the legality of the arrest was not before the court on the motion to suppress, and indicated that the question of probable cause for an arrest without a warrant would have no bearing on the question of voluntariness of a confession subsequently obtained.

The prosecutor did not mention punishment during the first half of his argument to the jury except that at the close of his opening argument he said he did not want to discuss punishment at this minute because he was almost out of time; that he

would like to discuss a little bit about the reasons behind the death penalty and then said: "I will not ask you to inflict the Death Penalty, I don't think it is my position * * *".

Defendant's attorney made no mention of punishment in his argument to the jury. During the state's closing argument, the prosecutor began to discuss punishment. Defendant objected as not being proper rebuttal, which objection was overruled. The prosecutor then asked the jury to return a "strong verdict". He argued hypothetically that there could be a first-degree murder case in which a death penalty would not be warranted. He then distinguished the instant case from his hypothetical, saying there was no mitigation in this case. He argued for a "strong verdict" and told the jury it could impose the death penalty. The jury assessed punishment at death. The objection was duly preserved in defendant's motion for new trial and on this appeal.

■ Defendant has briefed numerous points on this appeal; however, we will decide only those issues necessary to a disposition of this appeal and those which will obviously recur on new trial. Defendant contends the trial court committed prejudicial error in overruling his objection to the state's concluding argument on punishment because the state did not argue punishment in its opening argument; the defense did not argue the matter and, consequently, was foreclosed from answering the state's argument because it occurred for the first time in the final phase of the prosecutor's summation. Defendant says that it would have been foolish for him to have initiated any argument concerning punishment in view of the prosecutor's statement to the jury that, "I will not ask you to inflict the Death Penalty".

In Shaw v. Terminal Railroad Ass'n of St. Louis, Mo., 344 S.W.2d 32, 37, this court said: "Counsel having the affirmative will be held to the requirement of fairly stating his essential points in the

opening argument, at least to the extent that the defendant may fairly answer them; and a failure to require this will ordinarily constitute error, if the point has been properly raised at the time and preserved." In State v. Peterson, Mo., 423 S. W.2d 825, this court, in reversing and remanding, held the rule stated in Shaw, supra, to be applicable to criminal cases. Subsequently, in State v. Wadlow, Mo., 450 S.W.2d 200, this court followed State v. Peterson in reversing and remanding a judgment of conviction on the sole ground that the trial court erred in permitting argument on punishment to be made in the state's concluding argument, over defendant's objection, when there was no mention of punishment in the opening portion of the state's argument.

In the instant case, the prosecutor did mention punishment in his opening argument. However, this was done in a way that could reasonably be understood to mean that the state would not argue for the death penalty. If so understood, there would be even less reason for defendant to argue punishment at all, because the only other punishment available should defendant be found guilty of first-degree murder was life imprisonment. The state, with admirable candor, seems to concede that the statement of the prosecutor could have reasonably been so understood by the jury and defense counsel, for in its brief the state says: "At first blush it might appear that the prosecutor indicated in opening argument that he would not ask for the death penalty, and then suggested a death sentence in closing argument. If this were so, he might have been responsible for a situation in which the defense counsel saw no reason for discussion of punishment—for if the prosecutor indicated that he did not want a death sentence, the jury could not find guilt of the only charge submitted to them without assessing at least a life sentence. Defense counsel could not help his client by arguing punishment."

This court, in discussing this issue in State v. Peterson, Mo., 423 S.W.2d 825,

831, said: "The point will, of course, be ruled in each case on its own peculiar facts, including these issues: whether a fair statement of the State's position has been made in some manner in its opening argument; whether any waiver has been made by the defendant, either by his counsel's own argument or by the failure to object properly and to preserve the point; and, lastly, a determination of the question of prejudice in view of all the circumstances."

The state seeks to avoid the application of Peterson to this case by arguing that the prosecutor did not try to urge the death sentence on the jury. A fair reading of the record clearly indicates to us that the prosecutor did, in his concluding summation, argue for the death penalty and urge it on the jury.

We believe State v. Peterson, supra, is applicable here. The statement by the prosecutor that he would not ask the jury to inflict the death penalty was not a fair statement of the state's position if the state intended to urge the death penalty in concluding argument, as it did here. There was no waiver by the defendant in his argument as defendant's counsel did not argue punishment at all. Defendant objected properly at the first mention of punishment by the state and has preserved the point for review.

With respect to the question of prejudice in view of all the circumstances, we note that in Peterson, supra, the court said, loc. cit. 830: "The defendant here was sentenced to more than a minimum term; as stated in Shaw, no one can know what the jury would have done had the argument proceeded in the normal course and had defendant's counsel thus been given an opportunity to answer. We do not consider that the imposition of a term of three years instead of ten eliminated the inherent prejudice."

In the instant case the jury assessed the maximum punishment—death—and consequently the rationale of Peterson, supra, is

clearly applicable. We hold here that the final argument of the state's counsel constituted prejudicial error requiring a new trial.

Since the question of the admissibility of the two purported confessions of defendant will undoubtedly again arise on retrial, we will treat with them as they stand on the record now before us. We first have the statement attributed to defendant at the time of arrest at his home where, in response to interrogation by the arresting officer, he replied he believed he was being arrested for being implicated in the Mike LoGrasso holdup and killing but that he did not kill him. The state concedes in its brief that there is a problem with respect to the admissibility of the foregoing statement because, as the state says, apparently there were no warnings given to defendant prior to being questioned by the arresting officer at the time of arrest, but suggests that defendant failed ·to make the proper objection and, therefore, its admission was not error. In view of the disposition being made of this appeal, we do not decide whether the issue was properly raised and preserved nor whether the warnings were given prior to the questioning. On retrial the court should hold the appropriate hearing and determine whether the requisite warnings were given and, if so, all other voluntariness questions pertinent to the admissibility of the subject statement. State v. Hunter, Mo., 456 S.W.2d 314, 316[3–5]; State v. McGee, Mo., 447 S.W.2d 270, 274–275; Miranda v. Arizona, 384 U.S. 436, 479, 86 S.Ct. 1602, 1630[66], 16 L.Ed.2d 694; Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205.

Second, we have the confession given by defendant while in custody at the police station following arrest and as a result of interrogation. In defendant's motion to suppress he alleged, inter alia, that his arrest was illegal. As stated, supra, during the court's hearing on defendant's motion to suppress defendant's statements, the court sustained the state's objections to defendant's questions put to the police officers pertaining to the circumstances surrounding the arrest. The arrest was without a warrant and defendant sought to show it was also without probable cause, contending that an illegal arrest is an element—one of the circumstances—for the trial court to consider in its determination of the question of voluntariness of a confession subsequently obtained.

We voice no opinion as to the legality of the instant arrest nor the factual impact, if any, of an illegal arrest, if it be so, on the question of the voluntariness and consequent admissibility of the subject confession. This is a question for the trial court to resolve under the totality of the circumstances shown in evidence during the hearing on the motion to suppress.

In State v. Funchess, S.C., 179 S.E.2d 25, the South Carolina Supreme Court had a similar issue before it and reviewed the law with respect thereto, saying loc. cit. 27–28: "The appellant argues that his confession was given at a time when he was under illegal arrest, and a confession so obtained was inadmissible in evidence. The appellant relies on the case of Wong Sun v. United States, 371 U.S. 471, 83 S. Ct. 407, 9 L.Ed.2d 441. The question for decision is whether the trial judge was in error in admitting the confession of the appellant over his objection for the reason stated. In considering the appellant's contention, we assume, but do not decide, that he was illegally detained by the police when he gave his confession.

"The Wong Sun decision has been interpreted by various appellate courts so as to produce a definite split of authority. One line of cases hold that any confession made subsequent to illegal arrest, regardless of its voluntariness, must be excluded. State v. Mercurio, 96 R.I. 464, 194 A.2d 574, Gatlin v. United States, 117 U.S.App.D.C. 123, 326 F.2d 666, State v. Thompson, 1 Ohio App.2d 533, 206 N.E.2d 5, State v. Dufour, 99 R.I. 120, 206 A.2d 82.

"Many other appellate courts interpret Wong Sun as not requiring the exclusion of a confession made following an illegal arrest, retaining the test of voluntariness as controlling in determining the admissibility of a confession which has been preceded by an illegal arrest. Prescoe v. State, 231 Md. 486, 191 A.2d 226; People v. Freeland, 218 Cal.App.2d 199, 32 Cal. Rptr. 132; Burke v. United States, 1 Cir., 328 F.2d 399; United States v. Close, 4 Cir., 349 F.2d 841, and State v. Moore, 275 N.C. 141, 166 S.E.2d 53, and the many cases therein cited.

    *    *    *    *    *    *

"[2] We have held that a confession made while the accused is in the custody of an officer before any warrant for his arrest has been issued does not render it inadmissible. State v. Brown, 212 S.C. 237, 47 S.E.2d 521. However, the conduct of the officers obtaining the confession will be rigidly scrutinized and the fact that it is made while the accused is under arrest is a circumstance to be taken into consideration in determining whether the confession was freely and voluntarily given. State v. Cain, 246 S.C. 536, 144 S.E.2d 905.

"We conclude and hold that every statement or confession made by a person in custody as the result of an illegal arrest, is not involuntary and inadmissible, but the facts and circumstances surrounding such arrest and the in-custody statement should be .considered in determining whether the statement is voluntary and admissible. Voluntariness remains as the test of admissibility."

This court in State v. Newell, Mo., 462 S.W.2d 794, January 11, 1971, said, loc. cit. 797–798: "Although under Wong Sun incriminating oral statements by an accused may be so intimately connected with the circumstances of an illegal arrest as to become tainted and inadmissible in evidence, that case does not hold that 'all oral statements are the fruit of the "poisonous tree" simply because they would not have been made but for the illegal actions of the police. We think the Court in Wong Sun clearly indicates the view that a statement which is shown to have been freely and voluntarily made without coercion, either physical or psychological, may be thereby purged of any stigma of illegality and the statement is admissible.' United States v. Close, 4 Cir., 349 F.2d 841, and cases cited, l. c. 851."

■ Thus, in Missouri we do not exclude a confession merely because it followed an illegal arrest but retain the test of voluntariness under the totality of the circumstances as controlling in determining the admissibility of a confession which has been preceded by an illegal arrest. In the hearing on the motion to suppress where one of the grounds alleged is illegal arrest, the court should receive evidence pertaining to the validity of the arrest and consider it along with the other evidence in arriving at its decision of voluntariness of the confession. In the instant case, the trial court erred in sustaining the objection to questions pertaining to the legality of the arrest and in excluding proffered evidence pertaining to the alleged invalidity of the arrest. On remand, the court should hold a hearing on the defendant's motion to suppress and, if offered, admit evidence pertaining to the legality or illegality of the arrest, and consider such evidence together with all the other admissible evidence in arriving at its decision on the voluntariness of the confession.

■ Defendant complains that there was insufficient evidence to support a finding by the court that defendant received the Miranda warnings and that the findings of the court were insufficient in that the court made no finding that defendant knowingly and intelligently waived his constitutional rights.

At the outset of this opinion we have set forth in part the evidence received on the motion to suppress with reference to the advice given defendant concerning his constitutional rights and we hold it sufficient to support the trial court's findings that

defendant was so advised. The court did not enter an express finding that defendant made a knowing and intelligent waiver of the rights of which he had been advised. It is not required that defendant expressly state a waiver of the rights of which he was advised and, although waiver cannot be presumed from a silent record, the court can find waiver from facts and circumstances unequivocally indicating a waiver. State v. Thompson, Mo., 465 S.W.2d 590 (decided April 12, 1971).

In State v. Monteer, Mo.Banc, 467 S.W.2d 48 (1970), the court affirmed a conviction and upheld the admissibility of a confession against the sole contention that the trial court erred in failing to make express findings that the Miranda warnings were given and defendant waived his rights. Nevertheless, the court quoting from United States v. Read, 9 Cir., 411 F.2d 582, 583, stated: "A defendant challenging the admissibility of a confession in the trial court has a right to 'the resolution of disputed facts upon which the voluntariness issue may depend.' Jackson v. Denno, 378 U.S. 368, 391, 84 S.Ct. 1774, 1788, 12 L.Ed.2d 908, 1 A.L.R.3d 1205 (1964). This is equally true where the issue is waiver. Thus, it is always advisable for the trial court to make explicit findings reflecting the specific facts upon which the trial court relies in determining the admissibility of a confession or the waiver of rights. Such findings are invariably helpful on appellate review. Their omission may compel reversal or remand. [citing cases.]"

Since this case is being remanded for new trial, the trial court will have the opportunity of complying with the admonition stated in State v. Monteer, supra.

■ Defendant contends the death penalty in Missouri exerts a constitutionally impermissible burden upon the rights of defendant to plead not guilty and have a jury trial, placing principal reliance on United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138, wherein the

United States Supreme Court struck down the death penalty provision of the Federal Kidnaping Act, 18 U.S.C. § 1201(a). The Federal Kidnaping Act permitted the death penalty to be imposed only by a jury, and could not be imposed by the court on a plea of guilty or upon a defendant who waives the right to jury trial. The United States Supreme Court held this to be an unconstitutional burden on the exercise of a defendant's right to plead not guilty and be tried by a jury. Missouri procedure is not subject to the same defect.

In Missouri the court has the power, on a plea of guilty, to sentence the defendant within the limits allowed by law and there is no statutory restriction against the court assessing the death penalty.

Defendant argues that in practice a given defendant may be able to avoid the probability or possibility of the death penalty by pleading guilty in circumstances where there has been discussion between the prosecutor and defendant's attorney resulting in the court not imposing the death penalty, whereas, if defendant pleads not guilty, he exposes himself to a jury assessment of the death penalty. While recognizing that this can and in some instances does take place, nevertheless, it is not a consequence of any legal impediment to the court's assessment of the death penalty as existed in United States v. Jackson, supra. The point is overruled.

■ The same attack which defendant makes on the constitutionality of permitting a jury to assess the death penalty under the statutory Missouri law, as well as the issue of cruel and unusual punishment, has been recently considered by this court in State v. Coleman, Mo.Banc, 460 S.W.2d 719, 730, and rejected. The point is ruled against defendant.

We cannot anticipate that alleged errors concerning the state's opening statement and other matters will arise in the same posture as now presented on retrial and,

therefore, they need not be ruled at this time.

Reversed and remanded.

FINCH, Acting C. J., DONNELLY, SEILER, MORGAN, and HOLMAN, JJ., and WOLFE, Special Judge, concur.

HENLEY, C. J., not sitting when cause was submitted.