**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Gerald L. COLLINS,
Defendant-Appellant.**

No. 11383.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 18, 1980.

Motion for Rehearing or to Transfer to Supreme Court Denied Feb. 1, 1980.

Application to Transfer Denied
March 11, 1980.

622

John Ashcroft, Atty. Gen., Weldon W. Perry, Jr., Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Loren R. Honecker, Honecker & Bender, Springfield, for defendant-appellant.

GREENE, Judge.

Defendant Gerald L. Collins was charged by information with felony car tampering in violation of § 560.175, RSMo 1969. He waived jury trial. After trial by court, he was found guilty and was sentenced to three years' imprisonment. This appeal followed.

The relevant facts are as follows. On November 22, 1976, Trooper Carl Watson, of the Missouri Highway Patrol, was driving his patrol car in a westerly direction on U. S. Highway 60, near the Wright/Webster County line. He was on a mission of mercy, which was an emergency blood relay. Watson observed the defendant, who was known by Watson as a car thief.[1] Defendant was walking in an easterly direction away from the station wagon and was 50–100 feet away from it when Watson first saw him. Trooper Watson picked up the emergency blood supply and, while retracing his route, noted the license number on the Pontiac. As a result of a license check, Watson found that the automobile belonged to an Emery S. Dilday of Springfield, Missouri. Watson then asked the patrol radio operator to contact Dilday and find out why the station wagon was parked at the location where Watson observed it. After submitting this request, but before receiving an answer, Watson again saw the defendant walking on the shoulder of the highway near the Mountain Grove bypass. Trooper Watson pulled his patrol car off the highway and "invited" defendant to get in, at which time defendant "had a seat in the car." Defendant was not ordered or forced into the patrol car and was not told he was under arrest.

Watson then proceeded to deliver the emergency blood to Cabool. On the return trip, Watson received a radio message that the Pontiac had been stolen in Springfield earlier that morning. At that time, Watson

1. Trooper Watson was aware, at the time he first saw defendant on November 22, 1976, of two pending charges against defendant involving stolen vehicles, and a number of juvenile charges of the same nature that had been filed against defendant in the past.

advised defendant of his constitutional rights, as per the *Miranda* warnings. Defendant stated that he understood his rights and denied any knowledge concerning the station wagon. Watson then drove to the location where the Pontiac was parked. They were met by Sergeant Crafton at that location. Crafton entered Watson's patrol car and defendant was again advised of his rights. Defendant indicated that he understood his rights and that he did not mind talking to the officers about the Pontiac station wagon. Defendant then admitted that he had taken the car that morning in Springfield, without the permission of the owner, and that he had driven it to the location where Watson first saw it. Defendant stated that he had abandoned the car because he was afraid someone might recognize him if he drove it in his home area near Houston, Missouri.

At trial, it was stipulated that the testimony of Emery S. Dilday, had it been presented, would have been that 1) he owned the 1970 Pontiac station wagon on November 22, 1976; 2) he parked the vehicle at his office in Springfield, Missouri, with the keys in the ignition at 8:30 to 9:00 o'clock that morning; 3) he noticed that the vehicle was missing at approximately 11:30 that morning; and, 4) he did not give defendant permission to operate the vehicle.

On appeal, defendant urges that the trial court erred 1) in admitting into evidence, and failing to suppress, evidence of defendant's extrajudicial confession because such confession was incompetent and inadmissible in that it was obtained through exploitation of a warrantless arrest of defendant made without probable cause, and hence, was the fruit of an illegal arrest, and 2) in finding defendant guilty because the state failed to adduce additional admissible evidence that defendant drove, operated or tampered with the motor vehicle in question.

Defendant's arguments are not persuasive. Although the testimony elicited at trial leaves some doubt as to when, and on the basis of what information, defendant was actually taken into custody by Trooper Watson, we need not consider this problem because of the voluntary nature of defendant's admissions. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), cited by defendant, does indicate that in some circumstances statements obtained through exploitation of official misconduct are inadmissible. *Wong Sun* has been construed by our supreme court to hold that:

> "[A] statement which is shown to have been freely and voluntarily made without coercion, either physical or psychological, may be thereby purged of any stigma of illegality and the statement is admissible."

> "Thus, in Missouri, we do not exclude a confession merely because it followed an illegal arrest but retain the test of voluntariness under the totality of the circumstances as controlling in determining the admissibility of a confession which has been preceded by an illegal arrest."

*State v. Fair,* 467 S.W.2d 938, 943 (Mo. banc 1971). This ruling has recently been upheld in *State v. Flowers,* 592 S.W.2d 167 (Mo. banc 1979).

Whether a confession is the product of free will, sufficient to purge the primary taint of the illegal arrest, must be answered on the facts of each case. *State v. Flowers,* supra, at 169; *State v. Johnson,* 530 S.W.2d 690, 693 (Mo. banc 1975). The state must prove "voluntariness" by a preponderance of the evidence. *State v. Olds,* 569 S.W.2d 745, 751 (Mo. banc 1978). Through the undisputed and uncontradicted testimony of Officers Watson and Crafton, the state has met that burden. The unrefuted evidence indicated that defendant was read his rights by both officers before the trip to Hartville began; that defendant said that he understood his rights and had no objection to talking to the officers; that defendant did not ask for a lawyer or ask that the questioning be stopped; that neither officer made any threats or promises to defendant; and, that while en route to Hartville, defendant freely and voluntarily confessed to the crime. Defendant offered no evidence to show that coercion of any

kind, either mental or physical, was put on defendant to get him to confess.

■ Under the totality of the circumstances, as revealed by the record before us, we are unable to say that the trial court erred in holding that defendant's statements were voluntary and thereby admissible. The voluntary nature of defendant's confession makes it unnecessary for us to determine the legality of defendant's arrest. Defendant's voluntary confession, being admissible, provided substantial evidence to support the trial court's finding of guilt. *State v. Johnson*, supra, at 694. Point one is denied.

As to point two, a review of the entire record indicates that there was more than sufficient evidence to show that the Pontiac station wagon owned by Dilday was illegally driven and operated by defendant in Greene County, Missouri, on November 22, 1976. Point two is denied.

The judgment is affirmed.

All concur.