### STATE of Missouri, Respondent,

v.

### David L. SPRAKE, Appellant.

### No. WD 32369.

Missouri Court of Appeals,
Western District.

June 15, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Aug. 3, 1982.

William E. Shull, Kearney, for appellant.

John Ashcroft, Atty. Gen., William K. Haas, Asst. Atty. Gen., Jefferson City, for respondent.

Before CLARK, P. J., and MANFORD and KENNEDY, JJ.

CLARK, Presiding Judge.

David L. Sprake was jury tried and convicted of murder in the second degree on a felony information filed February 5, 1980.[1] He was sentenced to a term of 35 years imprisonment and he now appeals contending: (1) Jury instruction on the defense of

---

**1.** No objection was made at trial and no point is presented here as to the defective information which charged Sprake with violation of § 559.020, RSMo 1969. The offense, committed in 1979, was controlled by § 565.004, RSMo 1978 to which the former section had been transferred. Although Rule 23.01(b)4, formerly Rule 24.01(a), requires citation in the informa-

justifiable use of force was incomplete; (2) Prejudicial testimony as to the victim's family was improperly admitted, and (3) Jury instruction on absence of motive was erroneously denied. Affirmed.

The evidence presented no dispute as to the cause of death of the victim, Danny Hargrave, who was fatally shot at close range by Sprake during an argument between the two on November 10, 1979 outside a tavern in Buchanan County. Although Sprake himself did not testify, he relied on evidence given by a police officer to raise the issue of self-defense. That evidence consisted of statements Sprake had made to the officer at the scene indicating that Sprake was in fear four or five of Hargrave's companions nearby intended to assault him.

■■■ The first point, a question as to the content of the self-defense instruction, MAI–CR2d 2.41.1, asserts that Sprake was entitled to have the jury instructed on the hypothesis that Sprake was not the aggressor, that threats made by the victim were known or communicated to Sprake and that apparent but false appearances could justify use of physical force. The jury was instructed generally on self-defense, the evidentiary burden on the state in such circumstance and the prospect of acquittal on that ground. MAI–CR2d 2.41, sub-paragraphs 2[4], 4 and 5, however, were not included which, Sprake claims, constituted error.

Recounted in some greater detail, the evidence in the case was that Hargrave, in company with three other men, left the tavern in the early morning hours and lingered briefly talking and awaiting another companion who was still inside. Sprake was some 10 to 15 feet away from the group leaning against the building. Hargrave left the group saying he wanted to talk to Sprake. A loud discussion between

Sprake and Hargrave followed, but Hargrave's companions could not hear the words spoken. After an exclamation by Hargrave, the witnesses saw Sprake raise his hand, a flash and the sound of a shot was heard and Hargrave fell. There was no evidence that Hargrave made any threatening movement or gesture or did more than stand face to face in the loud discussion with Sprake.

The only evidence, which at best was of dubious quality to raise the issue of self-defense, was Sprake's statement to the police officer after the event that Hargrave and his companions were waiting for him outside the tavern and were going to administer a beating. There was no evidence of any threats communicated by Hargrave at or prior to the confrontation and no evidence that Hargrave had any weapon or was in any way capable of or intended to inflict serious bodily injury or death upon Sprake. Indeed, the evidence was that Hargrave made no menacing gestures and gave no appearance of any intention to employ force. So, too, the testimony was that Hargrave's companions merely stood by at some distance and made no move to intervene.

Resort to deadly force as justification for homicide is available only in limited circumstances. Section 563.031.2, RSMo 1978. Defense of the person excuses employment of deadly force if the accused is faced with actual, or at least reasonably apparent danger of losing his life or suffering serious bodily injury. *State v. Mares*, 570 S.W.2d 332 (Mo.App.1978). Imminent assault and battery does not justify resistance by use of deadly force. *State v. Walker*, 525 S.W.2d 826 (Mo.App.1975). The most that the evidence in this case warranted was an apprehension by Sprake that Hargrave and his friends intended to provoke a fight. Sprake was not entitled to counter that threat by killing Hargrave. Sprake re-

tion of the statute proscribing the conduct charged, a failure to object and preserve the question for review constitutes a waiver of the

point. *State v. Harris*, 598 S.W.2d 200, 202 (Mo.App.1980).

ceived a more favorable instruction than was required by the evidence which made no case for the defense of justification.

Sprake's complaint that the self-defense instruction was deficient in not defining who was the aggressor and in failing to hypothesize threats and false appearances is also without merit because no evidence presented any of these issues. There was no evidence of aggressive conduct by Hargrave and no testimony that any threats had been communicated to Sprake, directly or indirectly. The appearance doctrine is inapplicable because there was no showing of an apparent situation misleading to Sprake. *State v. Ferguson*, 581 S.W.2d 132 (Mo.App.1979).

In his second point, Sprake asserts that the trial court erred in permitting the state to introduce evidence concerning the wife and children of the victim and to argue extraneous matters to the jury. The record demonstrates an excess of prosecutorial zeal. In his opening statement, the prosecutor informed the jury the evidence would show that Hargrave, immediately before he was shot, raised his hands and exclaimed, "No, not that." When later challenged by defense counsel, the prosecutor acknowledged that there was no such evidence and that his "memory slipped." The court denied a mistrial and required the prosecutor to explain to the jury that his statement was incorrect, the actual exclamation by the victim having been, "Hey, hey, hey."

In his opening statement, the prosecutor also observed that Hargrave had dined on the evening of the homicide with his wife and children, had left to meet his friends and had never seen his wife again. Objection to these comments was sustained, but a request for mistrial was denied. The state opened its case by calling Hargrave's widow, to which the defense objected on the ground the identity of the victim was stipulated and the widow had not witnessed any events nor had been present when Hargrave was shot. The objection was overruled and Mrs. Hargrave testified, stating only that she had last seen her husband at dinner in the home with their two sons. In closing argument the prosecutor stated, "He's dead and buried almost a year ago. But there are also other victims in this crime. His wife Nancy—." At this point, objection by the defense was sustained.

It is error to admit evidence of an inflammatory nature if it does not reasonably tend to prove or disprove a disputed fact issue. *State v. Mucie*, 448 S.W.2d 879, 887 (Mo.1970), *cert. denied*, 398 U.S. 938, 90 S.Ct. 1842, 26 L.Ed.2d 271 (1970). Ordinarily, evidence showing that the victim of a homicide left a family and children is immaterial and should not be admitted. *State v. Johnson*, 349 Mo. 910, 163 S.W.2d 780, 784 (1942). The situation in the present case resembles that in *State v. Pearson*, 270 S.W. 347 (Mo.1925). There, in a homicide prosecution, the state was permitted to introduce in evidence the blood stained garments of the deceased despite the acknowledgement by the defendant that he had shot the victim in self-defense. As the opinion noted, the sole conclusion was that the bloody garments were exposed to the jury and used in closing argument for the purpose of creating in the minds of the jurors an unwarranted prejudice against the defendant.

In the present case, Hargrave's widow testified only perfunctorily and then as to no subject in any way amounting to a fact issue in the case. It is perfectly apparent from the prosecutor's opening statement and closing argument that the widow was called to testify only for the purpose of exposing her to the view of the jury and using this vehicle to engender sympathy for the surviving family members and prejudice against the defendant. Worth repeating is the statement in *State v. Pearson*, "It is the duty of a prosecuting attorney, while representing the state, to see that the defendant in a criminal case is fairly treated during the progress of a trial."

While it was certainly error to permit Nancy Hargrave to testify and the comments by the prosecutor in opening state-

ment and closing argument were improper, it does not in this case follow that Sprake suffered prejudice. The claim briefed and argued by Sprake is that the evidence and argument affected the issue of self-defense " * * * in that it 'softened' the victim before the jury * * *." As was noted in the first portion of this opinion, the evidence failed to establish any viable issue as to the justifiable use of deadly force and Sprake can therefore demonstrate no prejudice if, as he claims, that defense was weakened by sympathy for Hargrave's family. The errors were, under the facts here, harmless. *State v. Cole*, 588 S.W.2d 94, 98 (Mo.App. 1979).

In his final point, Sprake complains that the court refused his tendered instruction as to failure by the state to prove a motive or reason for the homicide, and that failure to give the instruction was error. The same contention was presented and rejected in *State v. Stevens*, 467 S.W.2d 10 (Mo.1971), *cert. denied*, 404 U.S. 994, 92 S.Ct. 531, 30 L.Ed.2d 546 (1971), and no purpose would be served by reiterating the analysis of the issue which that decision supplies.

The judgment and sentence are affirmed.

All concur.