STATE of Missouri, Respondent,

v.

James G. KAIN, Appellant.

No. WD 36686.

Missouri Court of Appeals, Western District.

Dec. 31, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Jan. 28, 1986.

Application to Transfer Denied March 25, 1986.

Sean D. O'Brien, Public Defender, David S. Durbin, Asst. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before TURNAGE, P.J., and DIXON and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

The appellant James Kain was convicted by a jury of murder in the second degree of Rhonda West and sentenced to 55 years in prison. The sufficiency of the evidence to support the conviction is not questioned. The facts favorable to the verdict show the victim lived with her ex-husband, Robert Neighbors, in the basement apartment of a home. Kain, a nephew of Neighbors, lived upstairs with his mother and a sister. On July 28, 1983, Neighbors left for work about 7:00 a.m. and upon returning at 4:15 p.m. found the victim's body partially clothed on the living room floor. She died of a blow or blows to the head from a "claw" hammer belonging to Neighbors.

Next to the victim was a piece of crumbled paper containing the victim's blood and feces and Kain's palm print. That day the police interviewed Kain. Kain said he had seen the victim the day of the murder and had been in the apartment but denied the killing. Kain consented to the police taking his prints. Upon discovering prints on the paper, the police went to Kain's residence the next day and asked him to come to police headquarters for further interrogation. At the station, the police read Kain his *Miranda* rights, and Kain signed a waiver and consented to questioning. Kain first stated he was babysitting on the day in question and did not kill West. When told of the print on the paper, he admitted he had killed West with the hammer and gave a videotaped confession.

The introduction of the confession into evidence is the basis of Kain's first point on appeal. It states the trial court should have suppressed the statement because Kain "agreed to go to police headquarters for further interviewing as a witness and not as the suspect" and "was unable to appreciate the consequences and nature of his statement and therefore did not knowingly and voluntarily consent to interrogation." The gist of his argument is that since he had not been placed under arrest when he went to the station, he was lulled into making a statement without being told he was a suspect. This point has not been preserved. The review is under plain error. Rule 29.12(b). *See State v. Ritter*, 644 S.W.2d 387, 390 (Mo.App.1982).

Because Kain filed the motion to suppress during trial, it was untimely. Rule 24.05. However, the court granted leave to file the motion, which in conclusory language stated the statement was the product of an illegal arrest and was involuntary because it was induced by coercion while Kain was under "great mental strain." At the suppression hearing, the police testified Kain was in custody but had not been arrested when he gave the statement. The officer who conducted the investigation was the only one to testify. He stated the police "asked" Kain to go for further ques-

tioning and Kain agreed and though Kain was not under arrest at this time, he was not free to leave. Kain's status, however, is not dispositive on this point. The trial judge overruled the motion.

The new trial motion stated: "[T]he trial court erred, to defendant's prejudice, in overruling defendant's Motion to Suppress Statements made by defendant to investigative officers." Only a general objection to the introduction of the confession was made. Kain has never contended he was not given a *Miranda* warning. The point is not well taken and the trial court could have ruled adversely to Kain even had the judge been apprised of Kain's theory now advanced on appeal. There is nothing in this record to indicate an involuntary confession.

Kain advances no authority to support his contention the statement should have been suppressed because the police did not tell him of the incriminating evidence they possessed prior to taking him to the station. His reliance on *State v. Fair*, 467 S.W.2d 938 (Mo. banc 1971), is misplaced as that case does not address the issue at hand. *Fair* involved a statement made after an illegal arrest. The court held the illegal arrest in and of itself did not render the statement inadmissible, but the test was still the "voluntariness under the totality of the circumstances." *Id.* at 943. *Fair* merely advises trial judges to make findings upon determining the admissibility of a confession or the waiver of rights. *Id.* at 944. That is not an issue here.

Kain also offers *State v. Olds*, 569 S.W.2d 745 (Mo. banc 1978), as authority. *Olds* holds the state bears the burden of proving by a preponderance of the evidence the voluntariness of a confession while the suspect is in custody. *Id.* at 751–52. *Olds* involved an accused who testified at the supression hearing that prior to signing the waiver he had stated his intent to remain silent but was told he would have to wait until the questioning ended. The persistence in questioning rendered the statement inadmissible. *Id.* at 752.

■ From the totality of circumstances it appears by a preponderance of the evidence Kain was in custody when the police took him to headquarters the day after the murder. He was given necessary warnings as to his rights to remain silent, but Kain knowingly and voluntarily waived those rights, thus making the confession admissible. *State v. Evans*, 676 S.W.2d 324, 327 (Mo.App.1984). There is no flat requirement that the police divulge the strength of their case against a person prior to interrogation, and failure do so does not render the statement inadmissible. Even if the police conduct were a subterfuge, the deception does not "offend societal notions of fairness" nor was it "likely to procure an untrustworthy confession." *State v. Pugh*, 600 S.W.2d 114, 118 (Mo.App.1980). The point is denied.

Kain's other point attacks the trial court for admitting Neighbors' testimony that the victim was "disabled" and brain damaged from an auto accident in 1967. Neighbors said West had seizures and received disability benefits from the U.S. government. Kain made no objection to this testimony. Only after Neighbors said he continued to live with his ex-wife because "she needed somebody to take care of her" did Kain object to the relevancy and the prejudicial effect of the testimony.

■ Assuming the matter was properly preserved, the point is nevertheless denied. Even if the evidence was irrelevant or immaterial, there is no showing that the testimony prejudicially affected Kain's case. The evidence regarding Kain's print at the murder scene and other evidence made a strong case against the defendant, who presented no evidence. As in *State ·v. Sprake*, 637 S.W.2d 724 (Mo.App.1982), the testimony as to the victim's mental condition did not bear on a fact issue in the case, and it may here have been error to allow the testimony, but it does not follow the defendant suffered prejudice. *Id.* at 727–28. The jury obviously believed Kain killed the victim. It is not likely the victim's mental condition affected resolution of

guilt. *State v. Cole,* 588 S.W.2d 94, 98 (Mo.App.1979).

The judgment is affirmed.

All concur.